Terry Wayne RICKARD, a Minor, by his Mother and Natural Guardian, Betty Rickard, Plaintiff-Respondent,

v.

Roger W. PRATT, Defendant-Appellant.

No. 33602.

St. Louis Court of Appeals, Missouri.

Sept. 22, 1970.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 19, 1970.

Dearing, Richeson, Roberts & Wegmann, Hillsboro, for defendant-appellant.

Hulverson, Richardson & Hullverson, Martin J. Toft, St. Louis, for plaintiff-respondent.

WOLFE, Presiding Judge.

This is an action to recover damages arising out of personal injuries. The injuries were inflicted when a motorbike which the plaintiff was operating was struck by an automobile driven by the defendant. There was a verdict and judgment for the plaintiff in the sum of $8,000, and from the judgment the defendant brings this appeal.

At about nine o'clock on the night of May 2, 1967, the plaintiff, who at that time was seventeen years of age, was returning home from a carnival aboard his motorbike. He was traveling eastwardly on Cantwell Lane towards its intersection with Vandervoot Street in St. Francois County. Cantwell, which is also called Chestnut Street, runs east and west. The paved portion of the street is eighteen feet in width and it has one lane for traffic in each direction. Vandervoot Street runs north and south.

The defendant who was alone in his automobile was traveling west on Cantwell Lane and approaching the intersection of Vandervoot Street. He had turned on to Cantwell Lane from Highway 67 which is about three hundred feet east of the point where Cantwell is intersected by Vandervoot. He came off the highway at a speed of ten to fifteen miles per hour and did not increase his speed at any time as he intended to turn left into Vandervoot a short distance ahead. Thus both vehicles traveled from opposite directions toward the intersection. The plaintiff was traveling at a speed of thirty to thirty-five miles per hour. He saw the defendant's car. The defendant saw the light of plaintiff's vehicle approaching. Both vehicles were traveling in their appropriate lanes at the intersection. The defendant stated that he had turned on his blinker light indicating that he was going to make a left turn into Vandervoot. The plaintiff stated that no left turn signal was given. Both vehicles were in good operating condition.

The defendant made a left turn and struck the plaintiff's motorbike at the edge of the paved portion in the eastbound lane of Cantwell Lane. As a result of the collision the plaintiff was thrown violently to the ground. He was taken by ambulance to the hospital at Bonne Terre. His injuries will be set out in passing upon points raised in relation to them as well as other facts as they touch upon other points raised.

The first point raised is that the court erred in giving an instruction designated as Instruction No. 2 which directed a verdict for the plaintiff upon a finding of negligence on several counts of negligence,

including a failure to keep a careful lookout. It is appellant's contention that the evidence did not support the submission of a failure to keep a careful lookout.

■■ The appellant predicates this conclusion upon the testimony of the defendant wherein he stated that the light of the oncoming motorbike was visible to him at all times after he turned from the highway onto Cantwell Lane and that he watched the light at all times. He stated, however, that the collision happened almost instantaneously as he made his left turn. He told the highway patrol trooper that he saw the light coming on but that it looked "much further away than it was." The fallacy of appellant's contention is that the defendant merely by looking fulfilled his duty to keep a careful lookout. This does not follow for he was required to look in such an observant manner as to enable him to see what one in the exercise of the highest degree of care could and should have seen. Basler v. Huck, Mo.App., 435 S.W.2d 742; Walker v. Massey, Mo.App., 417 S.W.2d 14. The evidence was sufficient to submit a failure to keep a careful lookout as the jury could well conclude from it that if the defendant had kept a careful lookout he could have determined speed and proximity of the plaintiff's motorbike before turning into its path of travel.

■ The second point raised is that a Dr. Rifkin, one of plaintiff's witnesses, was erroneously allowed to testify that the plaintiff told him that he had been rejected by the draft board for military service because of an injury to his knee.

After the plaintiff was taken to Bonne Terre Hospital he was treated by his family physician. This physician testified that plaintiff had multiple contusions and abrasions and a laceration of the left knee. The doctor closed the knee laceration by first sewing the subcutaneous tissue and then the skin of the knee. The plaintiff remained in the hospital from May 2nd till the 10th of May. At the time of his release

he had some fever and he was readmitted on May 16th suffering from pneumonia and remained in the hospital again for ten days. The doctor testified that the pneumonia was caused by the accident.

A month after the accident he went to see Dr. Rifkin, about whose testimony the point under consideration is raised. Dr. Rifkin at that time examined the plaintiff. He stated the plaintiff was suffering from soreness and stiffness in the back of his left knee; he had pain in his hip, headaches, dizziness. He was nervous, tense, tired easily. He could flex his right knee to 145 degrees but the flexation of his left knee was limited to 115 degrees.

Dr. Rifkin examined plaintiff a second time on June 13, 1969. At that time all of the injuries apparent on the first examination had disappeared except the injury to the knee. The doctor again found that the flexation of the knee was the same as it had been on the first examination. The knee was tender to palpitation and there was a clicking or crunching sensation on bending and extending the knee. He gave as his opinion that the plaintiff was suffering from internal stretching or tearing of the anterior and posterior cruciate ligaments of the knee and that it would be a chronic and permanent condition.

■ Over the objection of the defendant the doctor testified that the plaintiff told him that he had been rejected for military service because of his knee. This was hearsay, as appellant contends and appellant properly asserts that a medical witness may not base his conclusions on hearsay evidence. We are cited to Schears v. Missouri Pacific Railroad Company, Mo., 355 S.W.2d 314, which so holds. In that case, however, the physician examined the plaintiff three and one-half years after an alleged accident and predicated his finding upon a lengthy history given him by the plaintiff. We have no such situation here for Dr. Rifkin made an extensive examination on two occasions. While the draft board examiner confirms in part the

diagnosis made by Dr. Rifkin there is nothing in the evidence to conclude that Dr. Rifkin relied upon the draft board rejection to reach his conclusion. He concluded that both the anterior and posterior ligaments were stretched or torn while the draft board record introduced in evidence bore the following statement: "Torn anterior cruciate ligament of left knee. Unacceptable." Under this statement of facts we are of the opinion that the submission in evidence of plaintiff's statement about draft rejection to Dr. Rifkin was not prejudicial.

 The next point raised is that the court erred in admitting the records of the draft board for the reason that the name of the examining physician of the draft board was not furnished to the defendant in compliance with an interrogatory which had been propounded by the defendant. We are cited to Laws v. City of Wellston, Mo., 435 S.W.2d 370, which holds that a party having once answered interrogatories in relation to the names of witnesses of an occurrence is under a continuing duty to disclose the names of witnesses discovered thereafter. We have no such situation here for the reason that the examining doctor of the draft board was never called as a witness. A further equally compelling reason is that the interrogatory propounded was: "If as a result of the injuries alleged in your petition you have been treated or attended by any hospitals or doctors state: a. The names and addresses of such hospitals or doctors." The draft board physician had not "treated or attended" the plaintiff "as a result of his injuries." He examined him only for the draft board to see if he was fit for military service. We find the point without merit.

 Another point goes to the argument of counsel for plaintiff. It is contended that he made statements "which were not supported by the evidence and were outside of the evidence." All of the argument to which the appellant objects relates to the evidence and inferences which counsel drew from it. "Counsel is allowed wide latitude in discussing the facts and arguing inferences from the evidence even though the inferences drawn are illogical or erroneous. * * *." Eickmann v. St. Louis Public Service Company, Mo., 323 S.W.2d 802, 1. c. 810. We have examined the statements complained of and the evidence in relation thereto and find that they did not patently pass legitimate bounds so as to be manifestly prejudicial. The trial judge who heard the argument could weigh its probable effect upon the jury and did so in overruling the motion for new trial. In such cases we defer to the opinion of the trial judge. We hold this point to be without merit. Handshy v. Nolte Petroleum Company, Mo., 421 S.W.2d 198.

 The last point raised is that the verdict of $8,000 is excessive. We have set out above the nature and extent of the injuries and we will not restate them. The young plaintiff, prior to the collision, had been active in high school athletics. His health was excellent and he participated in baseball, basketball and track. He was a regular member of the basketball team during his sophomore and junior years and was selected as a member of the All County Team during his junior year. He received a sportsman's award and three all-star trophies.

After the collision he resumed sports but in basketball he could not start or turn left as well as he did before. In baseball he had formerly played centerfield or pitched: after the collision he could not pitch but played rightfield. He did not go out for track. He was employed and the lack of stability in his knee bothered him at his work. He was obliged to wear a brace on his knee. We have here a situation where the evidence disclosed a continuing disability that restricts to some extent the activities of a very active young man. This is in addition to the other serious injuries he sustained by reason of the collision.

 The assessment of damages is a function of the jury. The amount should

be a sum that will reasonably compensate the plaintiff for injuries sustained. An award should not be held excessive unless it would work a manifest injustice to let it stand. We have been cited to no case wherein comparable injuries were sustained and an award of $8,000 has been held excessive. While we seek some reasonable uniformity in an award of damages, each case must stand on its own facts and consideration must be given to the extent to which the value of the dollar has declined. Breland v. Gulf, Mobile and Ohio Railroad Company, Mo., 325 S.W.2d 9. We do not find the verdict excessive and will not therefore order a remittitur as requested by the appellant.

For the reasons above stated the judgment is affirmed.

BRADY and DOWD, JJ., concur.