**Patricia Ann HILL and Harold Hill, Plaintiffs-Appellants,**

**v.**

**Gary Paul BARTON, Defendant-Appellant.**

**Nos. 38891, 38867.**

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 30, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 16, 1979.

124

Donald S. Hilleary, Clayton, Keith W. Hazelwood, St. Charles, Wuestling & James, Richard C. Wuestling, III, St. Louis, for plaintiffs-appellants.

Kortenhof & Ely, Ben Ely, Jr., Brent W. Baldwin, St. Louis, for defendant-appellant.

REINHARD, Judge.

This is a suit growing out of an intersection collision in which plaintiffs sought damages for personal injuries, property loss, and loss of services, and defendant counterclaimed for property damage. A jury trial resulted in a verdict and judgment against plaintiffs on their claims and against defendant on his counterclaim. All parties appeal.

On August 2, 1974, plaintiff Patricia Ann Hill was driving an automobile in a southerly direction on Lindbergh. She moved into the left-turn lane near Lindbergh's intersection with Pershall, intending to turn left and to proceed in an easterly direction on Pershall. Defendant Gary Paul Barton was driving an automobile in a northerly direction on Lindbergh, near its intersection with Pershall. The intersection was controlled by an automatic traffic light sequence. Southbound traffic on Lindbergh was permitted to turn left onto Pershall from a left-turn only lane at a time when the light controlling northbound traffic on Lindbergh was red. The testimony of the parties was in conflict as to which phase of the traffic light was in effect at the time their automobiles collided in the intersection.

According to Patricia Hill two automobiles were ahead of her when she pulled into the left-turn lane in preparation for the turn. All three automobiles were stopped on a green light, awaiting the left-turn arrow. Plaintiff Patricia Hill testified that the green arrow appeared, and the two vehicles ahead preceded her into the intersection and completed the turn onto Pershall.

Defendant testified the signal controlling northbound traffic was green as he neared the intersection with Pershall, traveling in the median or inside northbound lane; he had intended to proceed through the intersection north on Lindbergh. When he was some distance south of the intersection, he observed a southbound vehicle turning left onto Pershall, but it was sufficiently far ahead as to require no braking or other avoidance action. He stated the traffic signal changed from green to yellow shortly after he entered the intersection, and while he was passing Pershall Road, plaintiff entered his path.

Plaintiffs submitted in the disjunctive two issues on primary negligence, signal violation or failure to keep a careful lookout, and two issues on humanitarian negligence, failure to warn or to stop. Defendant submitted two issues on his primary negligence counterclaim, signal violation or failure to keep a careful lookout. Contributory negligence instructions as to plaintiffs' primary negligence instructions and defendant's counterclaim instruction were submitted.

■■■ Plaintiffs argue several points of error. Initially, we consider their contention that the trial court committed prejudicial error in permitting defendant to raise in closing argument the issue of contributory negligence as an absolute defense to plaintiffs' claims. Inasmuch as plaintiffs submitted their case on both primary and humanitarian negligence, limited discussion of plaintiff Patricia Hill's alleged contributory negligence as the issue pertains to and effects the claim of primary negligence would be permissible and appropriate. The matter of contributory negligence has no bearing on plaintiffs' humanitarian submission, however.

■■ We view the argument as a whole in determining whether certain comments were improper. Moreover, we note that when, as here, distinct legal issues are involved, it was the obligation and duty of the attorneys in their closing arguments to distinguish between the issues about which they are commenting when their comments were appropriate to one issue and not appropriate to the other. *Jones v. Gooch*, 453 S.W.2d 653, 654 (Mo.App.1970).

In his closing argument, defense counsel made several references to the question of contributory negligence, but on only one occasion did plaintiffs object, which objection was overruled. Early in defense counsel's argument the following occurred:

Mr. Ely:

When we started this trial last Wednesday and selected you as jurors, I asked all of you if you could follow the presumption of law here [that] before any party here is entitled to recover damages . . you would have to prove [sic] that the accident was the other person's fault under the Instructions read to you by Judge Ruddy. Just because your car is damaged in an accident, in other words, that does not mean you have an automatic right to recover against the other person who is in it. They must prove Gary and Mr. and Mrs. Hill's accident, under these Instructions, was the other person's fault before they are entitled to recover. *And, if they don't do that, or if you believe under these instructions both are to blame, then your verdict should be against both of them.* (Emphasis added.)

\* \*. \* \* \* \*

MR. HILLEARY: Objection, it doesn't state that.

THE COURT: Overruled. The Jury will be guided by the instructions.

About midway through his closing argument, defense counsel made the following comments with specific reference to plaintiffs' submission of humanitarian negligence:

Take these instructions with you to the jury room and I'm sure you will read them carefully . . . Seven (7) and Eight (8) [plaintiffs' humanitarian submissions] say basically that under our law a person who had the last chance, really has the last chance, is supposed to avoid an accident. This instruction tells you the verdict could be for plaintiff if Gary had time to avoid this accident even though Pat Hill ran a red light, . . .

But toward the end of his closing argument, attorney for the defendant stated:

Now, you will fill out this verdict form if you felt no one was entitled to recovery. Both Pat Hill and Gary, and *that under the instructions both are to* blame and both are at fault, then neither are [sic] entitled to recover against the other. And this is the verdict that none of the lawyers are [sic] asking for but the one (1) you should fill out if you feel neither party should recover from the other and both are at fault. (Emphasis added.)

■■ Determining the bounds of legitimate argument and the effect of allegedly prejudicial argument is especially troublesome in multiple-claim litigation involving both primary and humanitarian submissions. The permissible field of jury argument is broad, though, and the regulation of argument is a matter largely within the discretion of the trial judge. "The trial court possesses a coign of vantage which best permits it to observe the proceedings and judge the prejudicial force exerted on the jury by counsel's comments." *Schmid v. Langenberg*, 526 S.W.2d 940, 946 (Mo. App.1975); *Carrel v. Wilkerson*, 507 S.W.2d 82, 85 (Mo.App.1974); *White v. Gallion*, 532 S.W.2d 769, 771 (Mo.App.1975). The proposition was succinctly stated in *Carrel v. Wilkerson, supra* at 86:

While a trial court, because of its coign of vantage of the proceedings and their effect on the jury, has a large discretion in permitting, restraining and purging final argument . . ., there is no room for the exercise of judicial discretion on an issue of law.

See also *Jones v. Gooch*, 453 S.W.2d 653, 655 (Mo.App.1970).

■ We hold defense counsel misstated the law when he told the jury, without qualifications, that neither party could recover if the jury found both were at fault for the accident. The import of these statements was that if plaintiff and defendant were both negligent, neither was entitled to a favorable verdict on his claim against the other. Since plaintiffs submitted on both primary and humanitarian negligence, and defendant submitted only on primary negligence, the statements of defense counsel were correct only insofar as they applied to the primary submissions, but incorrect as regards plaintiffs' humanitarian submission. The question of Patricia Hill's negligence has absolutely no relevance to plaintiffs' humanitarian claim, yet the jury might have been led to infer otherwise based on defense counsel's statements.

■ In retort, defense counsel argues: Given the fact that the record itself indicates that the jury was constantly referred to the instructions, both by the Judge and by the defendant's counsel, [In each instance, counsel prefaced his statements with "under these (the) instructions . . ."] and the additional fact that the trial judge, in overruling plaintiffs' request for a new trial, of necessity, determined that the argument was not prejudicial, defendant respectfully submits that contributory negligence was, in fact, not injected as a defense to humanitarian negligence.

We disagree. The phrase "under these [the] instructions" did not refer to specific numbered instructions, and it did not refer specifically to the primary submissions. The phrase was overly general in tenor and was as much as to say, "Under the law of this case . . . ."

The court overruled an objection to the statement, "If under these instructions you find that both are at fault, then neither [is] entitled to recover and then your verdict should be against both of them." The court admonished the jury to "be guided by the instructions." The inescapable inference to be drawn by the jury was if plaintiff was contributorily negligent, she could not recover under any of the theories of negligence on which she submitted. This clearly is a misstatement of the law. And "[i]f the trial court overrules the objection [to a misstatement], thereby condoning the misstatement, reversible error is almost inevitable." *Halford v. Yandell*, 558 S.W.2d 400, 412 (Mo.App.1977). We recommend *Halford* for its thorough collection and discussion of Missouri appellate cases reviewing questions of misstatements of law.

Arguably, the misleading and prejudicial effect of these statements was minimized when defense counsel, referring specifically to the issue of humanitarian negligence, stated at another point in his argument, "This instruction tells you the verdict could be for plaintiff if Gary had time to avoid this accident even though Pat Hill ran a red light . . . ." However, after this statement the defense counsel stated, "that

under the instructions both are to blame and both are at fault, then neither are entitled to recover against the other." Counsel in effect explained to the jury that plaintiff could recover under the humanitarian instruction despite negligence on her part. Later in his argument, however, counsel again misstated the law. Thus we cannot say the reference to the humanitarian instruction negated the prejudicial impact of misstatements made elsewhere.

The trial court was required to prohibit or correct the improper argument, and failure to do so mandates reversal of the judgment below on plaintiffs' claims.

Plaintiffs challenge Instruction No. 6, given at the request of defendant. The instruction submits contributory negligence as a defense to plaintiffs' primary submissions under Instruction Nos. 4 and 5. It reads:

> Your finding under Instruction No. 4 and 5 must be for defendants [sic] on the claims of both Patricia Hill and Harold Hill if you believe:
>
> First, plaintiff Patricia Hill either: violated the traffic signal, or failed to keep a careful lookout; and
>
> Second, plaintiff Patricia Hill's conduct in any one or more of the respects submitted in paragraph First, was negligent; and
>
> Third, such negligence of plaintiff Patricia Hill directly caused or directly contributed to cause any damages plaintiffs may have sustained.

■ The instruction as submitted complies with MAI 32.01, Contributory Negligence—Generally, and is correct and complete. Since it submits two acts of negligence in the disjunctive, there must be substantial evidence tending to prove each of the acts submitted. Notes on Use, MAI 17.02; *Wolfe v. Harms*, 413 S.W.2d 204, 210 (Mo.1967); *Shaffer v. Kansas City Transit, Inc.*, 463 S.W.2d 606, 609 (Mo.App.1971).

Plaintiffs argue the instruction was erroneous because there was insufficient evidence of plaintiff Patricia Hill's failure to keep a careful lookout. They do not chal-

lenge the sufficiency of evidence of violation of the traffic signal.

Plaintiff testified that before initiating the left turn, she looked down the northbound lanes to determine whether there was oncoming traffic, but that her view was partially obstructed by a car parked in the northbound lane closest to the median. She testified she could have seen three-fourth's of a block, if the car had not been parked there. Defendant said no car was standing in the northbound lane in which he was traveling. Plaintiff further testified that she was traveling approximately 5 miles an hour, attempted to brake when she saw defendant's car traveling northbound, and had come to a complete stop before the two cars collided. When she first saw defendant, he was approximately 45 feet from her, but she claims she saw him at all times while he was in the intersection. Defendant testified that he was traveling at a speed of 35 to 40 miles an hour.

The rule is well established that the alleged negligent failure to keep a careful lookout is not to be submitted to the jury unless there is substantial evidence from which the jury could find that in the exercise of the highest degree of care, the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle in time thereafter to have taken precautionary action. *O'Neill v. Claypool*, 341 S.W.2d 129 (Mo.1960). Where failure to keep a careful lookout forms the basis of a contributory negligence defense, "additional evidence was necessary from which the jury could find that plaintiff's failure to keep a careful lookout was a proximate, contributing cause of the collision." *Heberer v. Duncan*, 449 S.W.2d 561, 563 (Mo. banc 1970). The mere looking does not fulfill one's duty to keep a careful lookout. A person is required to look in such an observant manner as to enable him to see what one in the exercise of the highest degree of care could and should have seen. *Rickard v. Pratt*, 459 S.W.2d 13 (Mo.App.1970). In determining whether there is substantial evidence to support the instruction, we view the evidence and all reasonable inferences

therefrom from the standpoint most favorable to the defendant. *Corbin v. Wennerberg*, 459 S.W.2d 505 (Mo.App.1970).

From conflicting testimony, the jury could have found that no car was parked in the northbound median lane obstructing plaintiff's view to the south. Although there was no evidence as to the length of a block, a block, when used to express a measurement of distance, is approximately 300 feet. *Lilly v. Boswell*, 362 Mo. 444, 242 S.W.2d 73 (1951). Therefore, the jury could conclude that the plaintiff could have seen defendant when he was approximately 225 feet away. This separation, it could reasonably be concluded, would have afforded plaintiff ample time to see that which was plainly visible and to have taken effective precautionary action. Yet plaintiff testified defendant was at a distance of approximately 45 feet when she first observed him. A jury could conclude she did not see defendant's automobile sooner because of her failure to keep a careful lookout and that she therefore was unable to bring her own automobile to a stop sooner than she did and to thereby avoid the collision.

Plaintiff, contends, however, that defendant's presentation of the case urges facts so conflicting and contradictory that they cannot be deemed substantial evidence. Much of the testimony of both parties consisted of estimates of the relative speeds, distances and locations. As a general rule, parties are not bound by their own estimates of speed, distances, and location. *Baldwin v. Atchison, Topeka & Santa Fe Railway Co.*, 425 S.W.2d 905, 911 (Mo.1968).

It is true that where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, a submissible case is not made. *Adelsberger v. Sheehy*, 332 Mo. 954, 59 S.W.2d 644, 647 (1933). But this is not the case here. Defendant could rely upon

his own testimony as well as that of plaintiff to produce sufficient evidence to warrant submission of failure to keep a careful lookout. There was substantial evidence adduced to permit the submission of plaintiff's failure to keep a careful lookout.

 Plaintiffs assert further that Instruction No. 6 was erroneous because it allowed the jury to render a verdict in favor of defendant on all of plaintiffs' claims, including their humanitarian submission, if plaintiff Patricia Hill was contributorily negligent. Plaintiffs point to the first clause of the instruction, which states: "Your *finding* under Instruction No. 4 and 5 must be for defendants [sic] on the claims of both Patricia Hill and Harold Hill if you believe: . . . ." (Emphasis added.) They argue the word "finding" is synonymous with "verdict," citing Black's Law Dictionary, 3d ed., and Webster's New World Dictionary, and suggest that the jury is incapable of discerning the important distinction in the meanings of these words.

As previously noted, Instruction No. 6 complies in all respects with MAI 32.01. Notes on Use to MAI 32.01 advise that when plaintiff submits both primary and humanitarian negligence, defendant's contributory negligence instruction must begin with, "Your finding . . . ." rather than, "Your verdict . . . .", and must include a cross reference to plaintiffs' primary verdict directing instruction. Instruction No. 6 meets these requirements. The substitution of "finding" for "verdict" in MAI 32.01 is "to make it clear that the jury is not dealing with the ultimate determination of the case but only with one theory of recovery." Notes on Use, MAI 32.01. So too, the reference in Instruction No. 6 to Instruction Nos. 4 and 5 (plaintiffs' primary verdict directors) was intended to, and presumably did, inform the jury that the instruction had application only to plaintiffs' claim of primary negligence.

 The "Notes on Use" to MAI should be "religiously followed," *Ronan v. Reidel*, 510 S.W.2d 762, 763 (Mo.App.1974), *citing Hunter v. Norton*, 412 S.W.2d 163, 166 (Mo. 1967), and failure to so comply may render an instruction fatally defective. Such was the holding of the court in *Ronan*, where defendant's contributory negligence instruction was amended to include reference to plaintiffs' primary verdict director, but was not amended with the substitution of the word "finding" for "verdict". Plaintiffs' contention here is without merit.

 Plaintiffs' next point is equally without merit. They challenge Instruction No. 2, the burden of proof instruction, on the grounds it implies to the jury that plaintiffs' contributory negligence is a complete defense to plaintiffs' claims, including their humanitarian submission. In pertinent part, the instruction reads:

The burden is upon plaintiffs to cause you to believe the propositions necessary to support their claims against defendants. The burden is upon the defendants to cause you to believe the propositions necessary to support their defense that plaintiff Patricia Hill was contributorily negligent as submitted in Instruction No. 6. The burden is upon defendant Gary Barton to cause you to believe the propositions necessary to support his counterclaim against Patricia Hill. The burden is upon the plaintiff Patricia Hill to cause you to believe the propositions necessary to support her defense that defendant Gary Barton was contributorily negligent as submitted in Instruction No. 12.

The submitted instruction complies with MAI 3.01 and the applicable Notes on Use thereto, and therefore is presumed to be proper. It specifically refers to Instruction No. 6, defendant's contributory negligence instruction, which in turn specifically refers to Instructions No. 4 and 5, plaintiffs' primary verdict directors. We cannot conclude the burden of proof instruction, containing the required cross reference to defendant's contributory negligence instruction, misled the jury and caused it to conclude that contributory negligence on the part of Patricia Hill was a defense to any claim other than the claim of primary negligence.

In support of his appeal from the adverse judgment on his counterclaim, defendant argues the trial court erred in giving instructions to the jury which submitted the issue of failure to sound a warning as contributory negligence, barring defendant from recovery on his counterclaim, since there was insufficient evidence to support the submissions. Defendant does not challenge the sufficiency of evidence of failure to stop as submitted under the same instructions.

The verdict director on defendant's counterclaim provided in pertinent part as follows:

Your verdict must be for defendant Gary Barton on defendant Gary Barton's counterclaim for damages if you believe:

First, . . . and

Second, . . . and

Third, . . .

unless you believe defendant Gary Barton was negligent as submitted in Instructions 7 or 8 or 12.

We are concerned in particular with Instructions 7 and 8, plaintiffs' humanitarian submissions, which in pertinent part provide:

Your verdict must be for plaintiff, Patricia Hill (Harold Hill), on her (his) claim for damages if you believe:

First, . . . and

Second, . . . and

Third, at the moment when defendant Gary Barton first knew or could have known of [plaintiff's] position of immediate danger, defendant Gary Barton still had enough time so that by using the means available to him and with reasonable safety to himself and all others by using the highest degree of care *he could have avoided injury to the* plaintiff Patricia Hill by sounding a warning or stopping and,

Fourth, *defendant Gary Barton negligently failed to so sound a warning or stop,* and

Fifth, . . . . (Emphasis added.) Because defendant's verdict director on the counterclaim cross-references to Instructions No. 7 and 8, the latter have the effect of instructions on contributory negligence. Defendant does not challenge the use of humanitarian negligence as a defense and we consider only defendant's contention that the instructions are not supported by the evidence.[1] Instructions must be supported by the evidence, and when, as here, the instruction states more than one element of negligence in the disjunctive, there must be substantial evidence tending to prove each element.

Before we review the evidence as it applies to Instructions No. 7 and 8, it is appropriate to first review the principles of humanitarian negligence. The basic inquiry in a humanitarian case is whether plaintiff can demonstrate that he was in a position of imminent peril, or as denominated in MAI, immediate danger of being injured. When such a situation is found to exist, the humanitarian doctrine seizes upon the situation then in effect and blots out primary or antecedent negligence. It imposes a duty on the other party to thereafter exercise the required degree of care to avoid the threatened injury. The duty of the operator to act does not commence until the endangered person is actually in the other person's path or so close to it that it is apparent the operator will not stop before reaching it. The position or danger zone of imminent peril of a person approaching the path of a moving vehicle reaches no farther beyond the direct path of such moving vehicle than the distance within which such approaching person is unable by his own efforts to stop short of it. When a plaintiff is in a position of imminent peril, it is a question for the jury under all the evidence.

1. Defendant's brief stated:

Defendant-appellant contends that the trial court erred in giving Instructions 7 and 8 to the jury, in that there was insufficient evidence of failure to sound a warning as contributory negligence under the humanitarian doctrine to warrant that issue's submission. The evidence presented at trial failed to support these instructions, and defendant-appellant's motion for a new trial should have been granted.

The zone of imminent peril is always widened considerably beyond the immediate path of a moving vehicle by the obliviousness of the person approaching the path. This zone commences and the duty of a driver of a moving vehicle begins when he saw, or could have seen by the exercise of the highest degree of care, that the person approaching the path of his vehicle was oblivious to the danger and was intent on continuing across his path. To widen the zone, there must be both actual obliviousness and the reasonable appearance of obliviousness. *Frandeka v. St. Louis Public Service Co.,* ·361 Mo. 245, 234 S.W.2d 540, 547 (1950); *Findley v. Asher,* 334 S.W.2d 70, 73 (Mo.1960).

When a humanitarian case is based upon failure to warn, the plaintiff must show more than he would have to under a humanitarian case based upon a failure to swerve, slacken speed, or stop. The duty to warn presupposes a timely cooperative action by plaintiff to heed the warning and escape injury. Thus plaintiff must show that defendant had sufficient time to sound a warning and that plaintiff had sufficient time after hearing the warning to free himself of the peril. *Hill v. Boling,* 523 S.W.2d 867, 872 (Mo.App.1975).

Applying these principles to the evidence in this case we believe the plaintiff made a submissible case of failure to warn under the humanitarian doctrine.

Plaintiff testified that she could not see the defendant because her view was partially obstructed by a car parked in the northbound lane and that she first saw defendant when he was 45 feet from her. Defendant denies the existence of the automobile which plaintiff says obstructed her view. He testified that he saw her automobile from the time it started forward into the intersection.

A jury could have found that because of the location and angles of the automobiles, including the parked vehicle, defendant could have seen that the plaintiff was oblivious to him. There was evidence of both actual obliviousness and the reasonable appearance of obliviousness. This widened the zone of imminent peril.

Plaintiffs argue a jury could conclude that plaintiff Patricia Hill entered the position of immediate danger immediately upon entering the intersection. We disagree. Plaintiff Patricia Hill was stopped in the southbound left-turn lane immediately before entering the intersection. There is no evidence her car's left-turn signal was on. While the pavement of the southbound left-turn lane is clearly marked with white arrows designating it as a left turn only lane, the lane continues south of the intersection. Thus to a motorist traveling north on Lindbergh, it would not necessarily be obvious that a motorist standing in the southbound left turn lane intended to make a left turn. Prior to the actual initiation of the left turn, defendant could not reasonably have known plaintiff Patricia Hill was oblivious to the approach of defendant's vehicle and intent on continuing into his path. Thus he had no duty to take action anytime prior to the moment plaintiff Patricia Hill began her turn to the left and accelerated forward. Patricia Hill marked on Exhibit A with a green line her location from the time she entered the intersection to the point where she first observed defendant. Exhibit "A" was drawn to scale, and it can be determined from the exhibit that she had clearly made her turn when she was 30 feet from the point of collision. Plaintiff's testimony indicated that she was accelerating forward at all times in the intersection. Although plaintiff's cross-examination testimony is somewhat confusing, her testimony as to the line constitutes substantial evidence. We find that a jury could have found that the zone of peril began when plaintiff was 30 feet from the point of collision and that defendant had a duty to take action at this point.

To determine if a warning would have been effective we consider the evidence most favorable to plaintiffs' submission. The plaintiff was traveling 5 miles per hour (7½ feet per second) and defendant was traveling 35 to 40 miles per hour (52½ to 60 feet per second). When plaintiff

was 30 feet from the collision, defendant was 210 to 240 feet from the collision. The court can take judicial notice that the normal reaction time is ¾ of a second. See *Shelton v. Brumer*, 449 S.W.2d 673, 677, fn. 4 (Mo.App.1969). Allowing for the reaction time of ¾ of a second for defendant to sound the warning and ¾ of a second for the plaintiff to react to the horn, at the time plaintiff would have responded to defendant's warning, she would have traveled between 11 and 12 feet or to a point 18 feet from the point of collision. Traveling at 5 miles per hour the plaintiff could have reasonably been expected to stop her automobile before reaching the path of defendant's automobile. The court committed no error on this point.

██ Defendant argues the court erred in giving Instruction No. 12, plaintiffs' contributory negligence instruction, because there was insufficient evidence to support submission of defendant's failure to keep a careful lookout. The lookout issue was submitted with violation of a traffic signal, in the disjunctive, but defendant does not challenge evidence of the latter. As stated earlier, when an instruction submits two acts of negligence in the disjunctive, there must be substantial evidence of each of the acts submitted.

Viewing the record most favorably to plaintiffs, evidence was presented that plaintiff Patricia Hill began to make a left turn and entered one or both of the northbound lanes. Meanwhile, defendant was traveling in the curb or outside northbound lane at a speed of 35–40 miles an hour. The two northbound lanes were each 12 feet wide, and the point of collision was at least 3–4 feet inside the curb lane. Plaintiff testified that when she first saw defendant he was approximately 45 feet away. She was near or on the northbound center line. According to plaintiff's testimony she traveled at least 12 feet, across the median or inside northbound lane, to the point where plaintiff first observed defendant 45 feet away. Because defendant was traveling at least 7 or 8 times the speed of plaintiff, the jury could reasonably conclude defendant

moved a distance of 96 feet while plaintiff moved a distance of 12 feet; and that from a distance of approximately 141 feet (96 + 45), defendant should have been able to see plaintiff in time to have taken precautionary measures.

Indeed, defendant estimated he could have stopped within 30–35 yards. The plaintiff, Patricia Hill, testified that the defendant told her that he did not see her. We hold there was substantial evidence to warrant submission of defendant's failure to keep a careful lookout.

We have examined defendant's other allegations of error and find no prejudicial error.

Reversed and remanded as to plaintiffs' claims. Affirmed as to defendant's counterclaim.

STEWART, P. J., and STEPHAN, J., concur.