817 F.2d 476
 Loren HORTON, J.C. Chadwick, Donald L. Ragland, J.D.
Freeman, and Ernest Adams, Appellants,
v.
Duford TAYLOR, Individually and in his official office of
County Judge of Searcy County, Arkansas, Appellee.
 No. 86-1046.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1986.
Decided May 5, 1987.
Rehearing and Rehearing En Banc Denied July 14, 1987.
 
 Melvin Edward Morgan, Clinton, Ark., for appellants.
 Charles E. Clawson, Jr., Conway, Ark., for appellee.
 Before HEANEY and WOLLMAN, Circuit Judges, and BATTEY,* District Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 This case is once again before us on appeal. Appellants are road-grader operators who were former employees of the Searcy County Judge in the Searcy County, Arkansas, road department. They alleged that appellee, Duford Taylor, who was elected Searcy County Judge on the Democratic ticket in the 1982 general election, had dismissed them upon his taking office on January 1, 1983. They alleged that their dismissal resulted from their status as members of the Republican Party. The district court dismissed appellants' complaint, and they appealed to this court. (For a full discussion of the procedural and factual background of this case, see Horton v. Taylor, 585 F.Supp. 224 (W.D.Ark.1984)).
 
 
 2
 In Horton v. Taylor, 767 F.2d 471 (8th Cir.1985), this court held that the district court had erred in carving out a small-county exception to the rule of Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Accordingly, the court reversed the district court's judgment and remanded the case for further findings. Specifically, the court directed the district court to determine the reason or reasons for the dismissal for each of the appellants. The district court was also directed to determine whether any of the appellants had made statements on matters of public concern that may have led to or have contributed to their dismissal. If it found that certain of the appellants were dismissed because of overt activity involving arguably protected speech, the district court was directed to apply the balancing test of Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and in Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).
 
 
 3
 The opinion concluded its elaborate exegesis of Elrod-Branti-Pickering-Connick by stating:
 
 
 4
 Finally, if the district court should find that certain road-graders were dismissed for mixed motives, one motive implicating first amendment interests (political affiliation and/or overt speech) and one or more being unrelated to the first amendment, then the district court should apply the test of Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and determine whether Judge Taylor showed that some or all of the discharges "would have been made in any event for reasons unrelated to any exercise of protected first amendment rights." Jones [v. Dodson, 727 F.2d 1329, 1335 (4th Cir.1984) ]. If so, then judgment should be entered for him.
 
 
 5
 Horton v. Taylor, 767 F.2d at 481 (footnote omitted).
 
 
 6
 On remand, the district court[1] took further testimony. As in the first hearing, a number of the witnesses testified regarding the pervasive presence of partisan politics in Searcy County.
 
 
 7
 Not surprisingly, the didactic nature of the remanding opinion had a memory-enhancing effect on certain of the witnesses. Be that as it may, the record reveals that appellants portrayed themselves as faithful, dedicated, impartial roadgraders--good men and true, graders gleaming and at the ready--prepared to grade roads for one and all without fear or favor. Judge Taylor, on the other hand, painted a picture of appellants as a cabal of inept slackers who, when they were not drinking coffee and exchanging gossip at the local cross-roads stores, ran their machines to ruin, leaving a path of destruction in their wake.
 
 
 8
 The district court found Judge Taylor's testimony to be more credible than that of appellants. The district court found that although a motivating factor, appellants' party affiliation was not the sole motivation for their being discharged by Judge Taylor. The district court further found that certain statements made by appellants Horton and Adams during the 1982 general election campaign were mere expressions of personal invective and not statements on matters of legitimate public concern. The district court also found that Judge Taylor either ignored such statements or was unaware of them and that therefore the statements played no role in his discharge of Horton and Adams. Applying the test set forth in Mt. Healthy, supra, the district court found that Judge Taylor would have discharged appellants in any event for legitimate reasons unrelated to their first amendment rights.
 
 
 9
 With respect to the deficiencies in appellants' job performance, the trial court found that during their employment as roadgraders appellants had damaged culverts, destroyed personal property, improperly graded roads, refused to grade certain sections of road, left rock and debris piled in roadways, improperly graded private driveways, failed in certain instances to maintain county equipment, spent work hours at stores and coffee shops, slept in county equipment, and generally failed to discharge their job duties to the best of their abilities.[2]
 
 
 10
 Without recounting the testimony in detail, we conclude that although certainly not overwhelming, there is evidence to support the foregoing findings. True, there are inconsistencies in the testimony offered at the first and second hearings. Moreover, given the pervasive influence of partisan politics in Searcy County, one could be forgiven for viewing Judge Taylor's testimony with a healthy degree of skepticism. However, as the Supreme Court has reminded us, the standard of review set forth in Fed.R.Civ.P. 52(a) forecloses an appellate court from reversing a finding of fact merely because it is convinced that it would have decided the case differently. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Accordingly, whatever dubiety may arise from our reading of the cold record, it must yield to the command of Rule 52(a), for if ever there was a case that demonstrated the need for giving due regard to the opportunity of the trial court to judge the credibility of the witnesses, this is it. We cannot say that Judge Taylor's testimony was so internally inconsistent or implausible on its face that no reasonable factfinder would credit it. Id. 105 S.Ct. at 1512-13. Rather, we conclude that because Judge Taylor's testimony was neither incoherent nor facially implausible, the district court's findings based upon its decision to credit that testimony is not clearly erroneous. Id. 105 S.Ct. at 1513.
 
 
 11
 The judgment dismissing appellant's complaint is affirmed.
 
 
 12
 HEANEY, Circuit Judge, dissenting.
 
 
 13
 I respectfully dissent. In my view, the district court must be reversed because its findings do not comport with the prior directions of this Court and because they are, in any event, clearly erroneous.
 
 
 14
 In this Court's prior opinion, Judge John R. Gibson stated:
 
 
 15
 In short, the disposition of this case upon remand will depend, first, on whether Elrod-Branti or Pickering-Connick should be applied to judge the conduct the road-graders allege is protected, and, second, on whether, in any event, the discharges in each particular case stemmed from mixed motives to be evaluated under the Mount Healthy standard.
 
 
 16
 Horton v. Taylor, 767 F.2d 471, 481 (8th Cir.1985) (emphasis added).
 
 
 17
 On remand, the district court, in an unpublished opinion, found that the motivation for terminations was partially based upon the party affiliation of the plaintiffs. It then stated:
 
 
 18
 The court finds that other motivation for the discharges include ineffective and inefficient work, knocking down mailboxes, destruction of personal property, damaging culverts, improperly grading roads, refusing to grade certain sections of road, leaving rock and debris piled in the roadways, grading private driveways, instances of failing to properly maintain equipment, spending work hours at stores and coffee shops, and sleeping in county equipment.
 
 
 19
 Assuming, for the moment, that this may be a mixed motive case, the district judge failed to comply with this Court's opinion directing the district court to determine whether the discharge in each particular case was from a mixed motive; the result being that all five defendants are tarred with the very broad brush of ineffectiveness, inefficiency, destruction of property and malingering. This, notwithstanding the fact that the only thread that conceivably tied the five plaintiffs together, other than their politics, was the statement of Judge Taylor that from information he got, it appeared the five "kind of flocked together * * * they just stayed around by theirself [sic]." Transcript of supplemental hearing on remand at 128. At the minimum, therefore, this case must be remanded to the district court to require it to consider each of the plaintiffs separately.
 
 
 20
 In my view, however, a remand is unnecessary. We should reverse with direction to the district court to determine the damage that each plaintiff suffered as a result of his being fired for his political affiliation. This result is required because, in my view, the district court's findings are clearly erroneous.
 
 My reasons are as follows:
 
 21
 (1) All the plaintiffs, except one, were fired the day after election. "They were told that, at that time, they did not have a job." Transcript of Trial at 43. They were not given a reason at that time for their discharge. They were replaced by Democrats with no prior experience. The fifth plaintiff was fired about one week after election and no reason was given to him for this action.
 
 
 22
 (2) Judge Taylor testified at trial that persons had complained to him about the work of one or more of the plaintiffs before the election. He also testified that he observed that some road work in the county had not been properly done and that, in some instances, one or more of the plaintiffs had failed to grade roads on which the homeowners were primarily Democrats. Yet, he never gave any of the plaintiffs an opportunity to respond to these allegations before discharging them. The only impression that one can gain from his testimony was that he had run for election on a platform of better roads, and that his way of fulfilling his campaign platform was to fire those Republicans in the road crew that had supported his Republican opponent.
 
 
 23
 (3) In most instances, the complaints brought forward in court were ancient, trivial, or clearly rebutted. In other instances, neither Judge Taylor nor any other witness was able to relate the alleged improper conduct to any particular plaintiff.
 
 
 24
 As difficult as it is to break a long tradition of rewarding political supporters with jobs and punishing political opponents with loss of jobs, the Supreme Court has said the tradition must be broken. We should do so here.
 
 
 
 *
 The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas
 
 
 [2]
 The district court also found that appellants had knocked down mail boxes while grading roads. In his brief to this court, however, Judge Taylor concedes that there is no support for this finding