# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-1968

———————

Sherry Lesch,        *
       *
           Appellant,       *
       * Appeal from the United States
       v.               * District Court for the
       * Eastern District of Missouri.
United States of America;       *
Louis Gumpenburger,       *
       *
           Appellees.       *

———————

Submitted: January 15, 2010
Filed: July 15, 2010

———————

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

———————

SMITH, Circuit Judge.

Sherri Lesch brought suit seeking damages resulting from a car accident. Lesch sued the driver of the car that struck her vehicle, Louis Gumpenberger,[1] as well as the United States as a result of the actions of its employee, FBI Special Agent Dennis

———————

[1]This party's name is spelled, variously, "Gumpenberger" and "Gumpenburger" throughout the district court's order and both parties' briefs. We will, as his counsel does, refer to him as "Gumpenberger." Gumpenberger did not appeal his adverse judgment.

Rice. After a bench trial, the district court[2] concluded that Lesch proved damages of $695,878.53 against Gumpenberger, which included an award of $100,000 for future medical expenses. The court also concluded that Gumpenberger was solely responsible for Lesch's injuries. The court found that Rice was not negligent and dismissed the United States. Lesch appeals, contending that the district court clearly erred in concluding that Rice bore no responsibility for her damages. Lesch also argues that the district court miscalculated Lesch's award for future medical treatment expenses. We affirm.

## I. *Background*

Lesch suffered serious physical injuries in a four-vehicle accident while traveling northbound on Highway K in O'Fallon, Missouri. The other drivers involved were Rice,[3] driving northbound ahead of Lesch; Gumpenberger, driving southbound; and Timothy Frishholz[4], driving northbound behind both Rice and Lesch.

The relevant part of Highway K has two northbound lanes, two southbound lanes, and a center left turn lane used by both northbound and southbound traffic. Babble Creek Road enters Highway K from the west. Turn arrows are painted on the center lane of Highway K near the Babble Creek intersection: one arrow points west, indicating one can turn west onto Babble Creek, and the other arrow points east. A grassy field lies east of Highway K at that point. South of Babble Creek Road on Highway K are entrances to various businesses—on the west is a Dairy Queen and on the east is a daycare center.

---

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

[3]It is undisputed that Rice was driving a vehicle owned by the United States and acting within the scope of his employment during the accident.

[4]Frishholz was voluntarily dismissed with prejudice before trial, and his actions are not at issue in this appeal.

Rice, going northbound on Highway K, intended to turn left (west) onto Babble Creek Road. He moved into the center left turn lane shortly after passing the entrance to the Dairy Queen on the west and the day care on the east. Rice testified that "I looked up and there was a vehicle coming toward me." Rice saw Gumpenberger, traveling southbound, coming directly toward him in the same center turn lane. In an attempt to avoid a head-on collision, Rice turned sharply to the left, into the southbound lanes before reaching his Babble Creek Road turn. Simultaneously, Gumpenberger swerved partially to his right, back into the southbound lane, but then made a sharper left turn, overcorrecting trying to avoid hitting Rice's vehicle. Rice felt a slight bump, and the evidence shows that the rear right corners of the cars made contact. The impact was very slight; Rice's vehicle had a mark from the impact but no damage requiring repair. After swerving and hitting Rice, Gumpenberger's vehicle continued into the oncoming northbound Highway K lanes and collided violently with Lesch's vehicle traveling northbound. The impact forced Lesch's vehicle to the east, as if she had made a right turn. Lesch was thrown from her vehicle and landed on the roadway in the farthest east of the two northbound traffic lanes.

Frishholz was driving northbound behind Lesch, in the farthest east traffic lane. He saw the collision ahead of him and Lesch get ejected from her vehicle and land on the roadway in front of him. Frishholz tried to slow and stop, but may have hit some part of Lesch's leg. Frishholz then stopped, but then as he attempted to move his car off the roadway, he dragged Lesch's body some distance before stopping again.

Gumpenberger suffered a traumatic brain injury in the accident and has no memory of it. Rice testified that he saw traffic coming in the southbound lanes, but that he had looked before entering the center left turn lane and did not see any traffic approaching in the center lane. Rice estimated that he had slowed to 20 m.p.h. to make the turn. Rice estimated that Gumpenberger was 100 feet away and coming straight at him when he first saw his vehicle. Rice testified that he would not have entered the center lane had he seen another car already in it. Rice believed turning left was the

-3-

only available evasive action, and he believed that the turn avoided a head-on collision with Gumpenberger. Lesch, conversely, recalled that she had no time to take evasive action when she saw Gumpenberger coming into her lane.

Before the accident, Gumpenberger had been at a friend's house and had been drinking. His blood alcohol level, tested later at the hospital, was .113. The evidence showed that he did not brake at all before the impact with either vehicle, and witnesses estimated his speed at 40 m.p.h. Gumpenberger stated that he was headed to Monticello Estates, which is off Highway K approximately three miles south of the accident site.

Lesch's injuries included complex fractures of the left hip, dislocation of the left femur, a deep wound to her left leg, abdominal trauma, low back injury, and multiple cuts, bruises and abrasions. She underwent several surgical procedures, including reduction of fractures and skin surgeries. She was eventually moved from a hospital to a rehabilitation facility for physical and occupational therapy. She returned home on May 19, 2005, and continued to have therapy and assistance at home. By October of 2005 she was able to walk on her own. In August 2006, she underwent total hip replacement to alleviate pain still present as a result of significant cartilage damage. Lesch has also developed urinary incontinence as a result of the accident, and her doctors have not been able to find a successful treatment. In total, she has incurred $218,878.53 in medical bills as a result of the accident.

Before the accident Lesch worked as a bookkeeper for a small business. She returned to work in November 2005, but she found that sitting for long periods caused pain. Lesch was terminated in June 2006 and has not worked since. Prior to the accident, Lesch worked steadily and was physically active.

At the bench trial on October 20, 2008, the United States produced a surveillance video that showed Lesch moving around with no difficulty, shopping,

lifting heavy bags, and visiting with friends at a restaurant. The video also showed her using two shopping carts at once, pushing one and pulling the other, and then unloading the items—including many heavy items which totaled more than 100 pounds—into her car. Lesch testified that the activity shown in the video was very painful and that she had to lie down and wait for her husband to unload the car when she got back home.

A total of seven experts testified at trial, including accident reconstruction and investigation experts William Hampton and Kenneth Baker; Dr. Fallon Maylack, Lesch's orthopedic surgeon; Dr. Christopher Long, a toxicologist; Dr. Richard Katz, a medical doctor; Jan Klosterman, a registered nurse and life-care planner; and Dr. Thomas Ireland, an economist.

After trial, the district court concluded that Gumpenberger's negligence alone caused the accident. The court found that Rice kept a careful lookout, traveled at an appropriate rate of speed, signaled as required, and did all he could to avoid the accident. The court believed that Rice's sharp left turn evasive maneuver was the only reasonable action he could have taken. Based on reasonable inferences from the testimony and from the physical layout of the accident area, the district court found that Gumpenberger entered the center turn lane shortly before Rice saw him. The court found that Gumpenberger was traveling too fast for the conditions; illogically entered the left turn lane as there was no place for him to turn left at that point other than a grassy field; drove his car into the opposing lanes of traffic; failed to keep a lookout; and failed to take reasonable evasive maneuvers. The district court concluded that Gumpenberger simply drove into the oncoming traffic inattentively and impaired by alcohol.

The court concluded that Lesch proved damages of $695,878.53, including $218,878.53 for past medical and other expenses; future medical expenses of $100,000; $77,000 for past lost earnings and pension contributions; $200,000 for

future lost earnings and benefits; and $100,000 for non-economic damages including pain, suffering, physical restrictions, emotional distress and loss of enjoyment of life.

## II. *Discussion*

Lesch argues that the district court erred in assigning complete liability for the accident to Gumpenberger. Lesch requests that we reassess the facts and enter our own findings. Lesch specifically requests that we find Rice negligent and responsible for 50 percent of Lesch's damages. Lesch also contends that the district court erred in concluding that Lesch is entitled to only $100,000 in future medical treatment expenses and requests that we modify the district court's assessment of damages by awarding $235,000 instead.

## A. *Negligence*

Lesch first argues that the district court was clearly erroneous in its finding that "Rice kept a careful lookout" and "was not negligent." Lesch alleges that these findings were contrary to the expert testimony in the case. Lesch claims that the testimony from the accident reconstruction experts—Hampton and Baker—prove that Rice was negligent and at least partly responsible for Lesch's damages.

We review a district court's findings of fact under a clearly erroneous standard. *Dixon v. Crete Medical Clinic, P.C.*, 498 F.3d 837, 846–47 (8th Cir. 2007); *see also* Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."). "This standard of review does not permit us to substitute our own impressions for those of the district court." *Horner v. Mary Inst.*, 613 F.2d 706, 713 (8th Cir. 1980). In *Anderson v. City of Bessemer City, N.C.*, the Supreme Court described this standard of review:

Although the meaning of the phrase "clearly erroneous" is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles . . . is that a finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty . . . if it undertakes to duplicate the role of the lower court. . . . If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

470 U.S. 564, 573–74 (1985) (internal quotations, alterations, and citations omitted).

If the district court's findings rest on credibility determinations, as they largely do here, they command even greater deference from us, "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id*. at 575. Thus, when a particular factual finding rests on the judge's decision to credit one witness over another, that finding will "virtually never" amount to clear error absent an inconsistency with the court's other findings or an evident problem with the plausibility of the credited testimony. *Id*.

This case was filed under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and as such we are "bound to apply the law of the state in which the acts complained of occurred." *Goodman v. United States*, 2 F.3d 291, 292 (8th Cir. 1993) (citing 28 U.S.C. § 1346(b)). Under Missouri law, to prove a claim of negligence a plaintiff must

establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff. *Lopez v. Three Rivers Elec. Co-op, Inc.*, 26 S.W.3d 151, 155 (Mo. 2000).

A driver has a duty to operate his vehicle at a safe rate of speed under the conditions, keep a careful lookout, yield the right of way, remain on the proper side of the road, not make turns unless making sure they are safe, and take evasive action when possible to avoid a collision. *See generally* Mo. Rev. Stat. § 304.010(1) (duty to drive in a careful and prudent manner); Mo. Rev. Stat. § 300.200(2) (duty to obey traffic lanes); Mo. Rev. Stat. 304.351 (duty to yield right-of-way); *Hill v. Barton*, 579 S.W.2d 121, 128 (Mo. Ct. App. 1979) (duty to keep careful lookout). Merely "looking" is not enough to fulfill the duty to keep a careful lookout under Missouri law. *Hill*, 579 S.W.2d at 128. "A person is required to look in such an observant manner as to enable him to see what one in the exercise of the highest degree of care could and should have seen." *Id.*

Lesch does not specifically challenge the finding that Gumpenberger *was* negligent as much as she challenges the finding that Rice *was not*. To prove Rice's alleged negligence, Lesch primarily relies upon Rice's testimony that just before taking evasive action to avoid Gumpenberger's car he "looked up and there was a vehicle coming toward me." Lesch contends that a person cannot keep a careful lookout if they had to "look up" to see oncoming traffic.

Rice explained his statement, testifying that he "was looking forward and to look up means the vehicle's headlights and speed caught my attention." Rice testified that he looked straight ahead the whole time, was not distracted or talking on a cell phone and reacted as soon as he saw Gumpenberger's car in front of him. Rice took traffic safety training courses with the FBI. Rice offered a plausible explanation, and the district court credited the same. We will not disturb the district court's factual

finding that Rice kept a careful lookout. We therefore "conclude that because [Rice's] testimony was neither incoherent nor facially implausible, the district court's findings based upon its decision to credit that testimony [are] not clearly erroneous." *Horton v. Taylor*, 817 F.2d 476, 479 (8th Cir. 1987).

Lesch also argues that the district court's findings were clearly erroneous because the court failed to sufficiently discuss the testimony of the expert witnesses. However, Federal Rule of Civil Procedure 52(a) does not require explicit detail, and its absence does not constitute reversible error. Other circuits have found that a "memorandum order's failure to mention the testimony of plaintiff's expert does not render the district court's findings of fact defective." *Torres-Lazarini v. United States,* 523 F.3d 69, 74 (1st Cir. 2008). Rule 52(a) "only requires that the trial court set forth its reasoning with enough clarity that the appellate court may understand the basis of the decision." *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 613 (8th Cir. 2009). "Witness-by-witness particularity and expansive dissertations of law are unnecessary." *Id*. "Ideally, findings of fact should be clear, specific, and complete, without unrealistic and uninformative generality on the one hand, and without an unnecessary and unhelpful recital of nonessential details of evidence on the other." *Id*. (internal quotations and citation omitted).

Lesch, in essence, asks us to credit certain portions of Hampton's and Baker's testimony, which concluded that Rice did not keep a careful lookout and was negligent because he did not see Gumpenberger's car until it was only 100 feet away. Lesch cites no law to support this argument. The record shows the district court carefully listened to the testimony of the experts and interjected questions to Hampton and Baker during their testimony. There is no evidence that the district court failed to consider all the evidence presented. Lesch has not shown reversible error in the court's credibility assessments. Indeed, the court's conclusion that no fault was attributable to Rice matched Baker's conclusion, an expert whom Lesch argues was not mentioned in the district court's memorandum.

We also discern no reversible error in the district court's allocation of fault. Missouri comparative fault law requires the district court to assess percentages of fault to each person alleged to have been negligent. *Gustafson v. Benda*, 661 S.W.2d 11, 15 (Mo. 1983); *Allison v. Sverdrup & Parcel and Associates, Inc.*, 738 S.W.2d 440, 454 (Mo. Ct. App. 1987). As explained, we will not upset the district court's finding that Rice was not negligent. No fault need be assigned to a non-negligent party.

## B. *Future Medical Expenses*

Lesch next argues that the district court clearly erred in awarding her only $100,000 in future medical expenses. Lesch claims that the district court did not explain how it arrived at the $100,000 figure and that the expert testimony of Klosterman, Maylack and Katz lead to the conclusion that Lesch's expenses for future treatment will be between $175,000 and $295,000.

We review "the amount of damages calculated by the [d]istrict [c]ourt, a finding of fact, only for clear error . . . ." *Maristuen v. Nat'l States Ins. Co.*, 57 F.3d 673, 679 (8th Cir. 1995). "Like all other elements of damage in Missouri, future damages in a personal injury action are not compensable unless reasonably certain to occur." *Thomas v. FAG Bearings Corp. Inc.*, 846 F. Supp. 1400, 1408 (W.D. Mo. 1994) (internal quotations and citation omitted). "In order to recover, plaintiffs must prove that the [need for future medical treatment] is a reasonable certainty." *Id*. (citation omitted); *see also Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 210–11 (Mo. 1991) ("The standard for recovering for future consequences requires evidence of such a degree of probability of those future events occurring as to amount to reasonable certainty.").

Lesch's argument centers on the testimony of Dr. Maylack, Klosterman, and, to a lesser extent, Dr. Katz. Klosterman and Dr. Maylack cooperatively prepared a life-care plan which includes, according to Lesch, the reasonable care and treatment expenses Lesch will incur over the course of her lifetime. Lesch's life-care plan

included treatment for her orthopedic injuries, depression, and bladder incontinence. Klosterman testified to the costs of Lesch's care and treatment needs, and Klosterman and Dr. Maylack calculated the costs of future total hip replacement surgery which *may* be necessary in the future.

Dr. Katz also examined Lesch, reviewed her treatment records, reviewed the surveillance videotape of Lesch shopping, and reviewed Lesch's life-care plan. Dr. Katz agreed that Lesch sustained serious injuries and will need care and treatment for the rest of her life. Dr. Katz did not agree with Lesch's life-care plan in its entirety: He testified that Lesch does not need a power scooter and will need only half of the therapy included in the life-care plan. Dr. Katz testified that it is reasonable to expect that Lesch will need an additional hip joint replacement in her lifetime, which means an additional $41,617 to $58,557 in expenses would be added to the life-care plan. Lesch argues that her future treatment expenses, based on this testimony, will be a minimum of $175,000 and a maximum of $295,000.

The district court calculated Lesch's future expenses to be $100,000, without giving a line-by-line accounting of how it arrived at this figure. The district court, in its order, did discuss the evidence "tending to show that Lesch may have exaggerated her symptoms, including medical records where she reported to the doctors that she had recently done a lot of yard work, or where she reported to a therapist that she was able to clean house without rest breaks." The district court also discussed the surveillance video, which showed Lesch lifting heavy objects and operating two shopping carts loaded with supplies at the same time. Dr. Katz also testified that after watching these surveillance videos he found in Lesch a "different level of function than what I saw [from her] in the office" and thought that Lesch displayed activities that were "not the same level of functioning as the patient I saw in the office. . . . And it's not a subtle difference."

Lesch's case authority for assigning clear error to the district court is unpersuasive. In *Hagedorn v. Adams,* the court of appeals reversed the trial court's damage award and instructed the court to award an amount equal to the stipulated damages. 854 S.W.2d 470, 477 (Mo. Ct. App. 1993). However, Lesch's case includes no stipulated future medical costs but instead conflicting testimony. In *Vincent by Vincent v. Johnson*, a Missouri court reviewed a trial court's award of future damages. 833 S.W.2d 859 (Mo. 1992). The appellate court noted that although the evidence was not stipulated to, it was uncontested. The court pointed out that the burden of proof was on the plaintiff to prove the damages, and, "[a]s such, the [factfinder] could believe or disbelieve all or any part of the evidence supporting the plaintiffs' alleged damages." *Id*. at 862. "[T]he court may have had a duty to increase the verdict to cover proven losses, but [ ] only losses that were arguably proven. . . . " *Id*.

Applying our standard of review, we are not convinced that there are any *proven* losses for which the district court did not account. In this case, the district court heard all of the evidence from Lesch and the United States and awarded Lesch $100,000. Neither side indisputably proved an amount of future medical damages. Some evidence cast doubt on the "reasonable certainty" of the need for certain future medical expenses proposed by Lesch. On this record, we hold the district court's factual finding regarding Lesch's future medical expenses was not clearly erroneous.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____