Jeanette HUDSON, Respondent,

v.

John WHITESIDE, Appellant,

and

William G. Hudson, Defendant.

No. WD 57718.

Missouri Court of Appeals,
Western District.

Dec. 19, 2000.

Before HOLLIGER, P.J., BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

John Whiteside, defendant ad litem and legal representative of Verne Walters, deceased, appeals the $200,000 judgment against him and in favor of Jeanette Hudson for personal injuries Ms. Hudson sustained in an automobile collision with Mr. Walters. On appeal, Mr. Whiteside claims he was entitled to a mistrial because one of plaintiff's witnesses, a physician who had examined Ms. Hudson at Mr. Whiteside's request, mentioned that insurance companies hire him to perform medical examinations. Mr. Whiteside also argues the trial court should not have instructed the jury on failure to keep a careful lookout and failure to yield the right-of-way because Ms. Hudson did not make a submissible case on those claims. Because this court finds that Mr. Whiteside was not prejudiced by the physician's references to insurance, and Ms. Hudson made a submissible case on both of her negligence claims, the judgment of the trial court is affirmed.

**Factual and Procedural Background**

On August 19, 1989, Ms. Hudson was a passenger in a car driven by her husband, William Hudson. The Hudsons were traveling to the Lake of the Ozarks. While driving south on Highway 5, they approached an intersection with Lake Road 5–35. The traffic on Lake Road 5–35 had a stop sign at the intersection, but the traffic on Highway 5 did not have a stop sign. Mr. Hudson was moving with the flow of traffic on Highway 5, where the speed limit was 35 miles per hour, but he had kept a little distance between his car and the car in front of him. When the Hudsons were about 20 feet from the intersection, Mr. Hudson saw Mr. Walters' car on Lake Road 5–35, stopped at the stop sign at the intersection of Lake Road 5–35 and Highway 5.[1]

Clarence W. Hawk, Osage Beach, for appellant.

Danieal H. Miller, Daniel R. Dunham, Co-Counsel, Columbia, for respondent.

1. At the trial in March 1999, which was al- most ten years after the accident, Mr. Hud-

Mr. Hudson next saw Mr. Walters' car after the Hudsons' car had entered the intersection. At that point, Mr. Walters' car was in the intersection, and was two to five feet in front of the Hudsons' car. Neither Mr. Hudson nor Ms. Hudson saw Mr. Walters' car until it was directly in front of their car. Mr. Hudson slammed on his brakes, but was not able to stop in time to avoid hitting the passenger-side door of Mr. Walters' car. The collision totaled the Hudsons' car.

After the accident, Mr. Walters told an officer that he did not see the Hudsons' car coming. From where Mr. Walters had been stopped at the stop sign on Lake Road 5–35, he had an unobstructed view of 1,125 feet in the direction from which the Hudsons' car was traveling. It was misting rain at the time of the accident; however, the rain was not heavy enough to affect visibility.

After the accident, Ms. Hudson suffered pain in her neck, shoulder, and back for which she consulted numerous doctors over the years. Her treatment included two operations on the nerves in her shoulder and a subsequent surgery to remove a catheter that was no longer functioning. Despite the surgeries and treatment, Ms. Hudson continues to experience pain in her neck, shoulder, head, and back, which has caused her to limit or discontinue certain activities at home and at her job with the Missouri School for the Deaf.

On August 12, 1994, Ms. Hudson filed a petition against Mr. Walters and Mr. Hudson seeking damages for the injuries she sustained as a result of the accident.[2] Ms. Hudson dismissed her claims against Mr. Hudson prior to trial. After the first trial in January 1997, the jury returned a verdict in favor of Ms. Hudson for $3500,

upon which the trial court entered its judgment. Because the trial court had erroneously refused to admit into evidence certain hospital and doctor bills Ms. Hudson had incurred in seeking treatment for her pain after the accident, however, this court reversed the trial court's judgment and remanded it to the trial court for a new trial. *See Hudson v. Whiteside*, 966 S.W.2d 370 (Mo.App.1998).

The case was retried in March 1999. During the second trial, Mr. Whiteside moved for a mistrial after a physician, who had examined Ms. Hudson at Mr. Whiteside's request, said in his videotaped deposition that "it so happens, it's gravitated that the—that the insurance company defense people have sought me out more than plaintiffs' people have." Mr. Whiteside argued that the physician's statement injected insurance into the case in violation of the court's order sustaining Mr. Whiteside's motion in limine prohibiting any mention of Mr. Walters' insurance coverage. The court stated that it would reserve ruling on Mr. Whiteside's mistrial motion until after the jury's verdict to see if the jury came back with a verdict for Mr. Whiteside.

At the close of the evidence, the court instructed the jury on Ms. Hudson's alternative theories that Mr. Walters was negligent for failing to keep a careful lookout, or that Mr. Walters was negligent for failing to yield the right of way. The jury returned a verdict in favor of Ms. Hudson in the amount of $200,000. At that time, the court granted Mr. Whiteside's motion for a mistrial.

After granting the mistrial motion, the trial judge recused herself. The new trial judge subsequently denied Ms. Hudson's

---

son acknowledged that his memory had faded regarding the distance he was from the intersection when he first saw Mr. Walters. However, in his January 1992 interrogatory responses, he estimated that he was about 20 feet from the intersection when he first saw Mr. Walters stopped at the stop sign.

2. Because Mr. Walters died in 1992, Ms. Hudson actually filed her petition against "John Doe (Fictitious Name), Defendant ad Litem to be appointed legal representative of Verne Frank Walters, deceased." The trial court ordered that Mr. Whiteside act as defendant ad litem to represent Mr. Walters.

motion for judgment upon the jury's verdict and for rescission of the mistrial order. This court, however, issued a preliminary writ of mandamus and prohibition after Ms. Hudson filed a petition asserting that the trial court had no authority to grant a mistrial after the jury returned its verdict, relying on this court's holding in *Duckett v. Troester,* 996 S.W.2d 641, 646 (Mo.App.1999) (holding that the purpose of a mistrial is to halt proceedings due to prejudicial error, and once the trial is concluded, the trial court cannot grant a motion for a mistrial). *State ex rel. Hudson v. Roper and Hodge,* WD 57371 (Mo.App. June 29, 1999) (order granting preliminary writ of mandamus and prohibition). The preliminary writ ordered the trial court to take no further action in the case, other than to rescind its order granting a mistrial and enter its judgment on the jury's verdict, which the trial court did.

In response to the trial court's rescission of the mistrial order and entry of judgment on the jury's verdict, Mr. Whiteside filed a motion for judgment not withstanding the verdict and, in the alternative, for a new trial. The trial court denied the motion. Mr. Whiteside filed this appeal.

### References to Insurance Did Not Warrant a Mistrial

Mr. Whiteside's first point alleges error in the introduction of statements made by a physician, Dr. Francis Walker, in his videotaped deposition that Ms. Hudson played for the jury. Dr. Walker, a neurological surgeon who had examined Ms. Hudson at Mr. Whiteside's request, was deposed to preserve his testimony for trial. At two times during his deposition, he testified that he was most often hired by defense attorneys and insurance companies, rather than by plaintiffs' attorneys. The first occasion occurred when Dr. Walker was being cross-examined by Ms. Hudson regarding the nature of his employment with Medex, a medical examinations and testing center. During the cross-examination, the following colloquy took place on page 39, line 19 to page 40, line 24:

Q—is that your job in conjunction with Medex is to do examinations for lawyers like Mr. Hawk, correct, sir?

A Or insurance companies, yes.

Q Sure. And basic—

A That is correct.

Q Okay. And basically, in terms of your examinations for the—for either of those two entities, the attorneys that tend to hire you are defense lawyers, correct, sir?

A About 90 percent, yes, sir.

Q Okay. So basically obviously you're doing work for a insurance company which doesn't represent the claimant, correct, sir?

A I believe that's correct.

MR. HAWK: Well, I object to the form of the question. I think that's an issue that's not to be discussed in front of the jury, and I would object to that and have it stricken.

Q (By Mr. Miller) Okay. Sir, basically would it be fair to say that probably less than five percent of the work that you do for Medex is a situation where you're examining the person for the lawyer for the claimant; is that fair?

A Yes, I would say so. Probably less than ten percent.

Q Okay.

A Five percent.

Q Five or ten percent; somewhere in there would be fair to you?

A Yes.

On redirect examination by Mr. Whiteside, Dr. Walker was asked why he testified primarily for defendants. The questions and answers on page 64, line 21 to page 65, line 21 were as follows:

Q Okay. Now, Doctor, this is the first time that I've ever asked you or been involved in any type of case with you; is that correct?

A You're right.

Q Okay. And do you find any particular significance, Doctor, in the fact that you might examine defendants' clients more often than plaintiffs' clients? Is there any particular significance to you in that?

A Yes.

Q What is that, sir?

A Because I'm very conservative and I try not to testify as an advocate, and I just try to tell things as I see them, and it seems that the defense people like this better than the plaintiffs' people do.

Q They don't want to hear it the way it is?

A Not necessarily.

MR. MILLER: I object to the form of the question.

A I didn't—I didn't say that, and I didn't mean that.

Q (By Mr. Hawk) Okay.

A I'm just saying it so happens, it's gravitated that the—that the insurance company defense people have sought me out more than the plaintiffs' people have.

Prior to trial, Mr. Whiteside filed a motion in limine requesting that Ms. Hudson "be precluded from making any reference to the fact that Vern Walters was covered by insurance applicable to this cause of action or that any insurance coverage might be available. . . ." Ms. Hudson consented to the granting of the motion in limine and her attorney hired a video technician to redact portions of the videotaped testimony of Dr. Walker. The video technician was instructed to assume that every objection made during the deposition testimony was sustained and edit out the questions and answers.

At trial, Ms. Hudson asked to play the videotaped deposition of Dr. Walker for the jury. The trial court was advised that there was a transcript of the deposition testimony so the court reporter did not need to transcribe the video taped testimony. The trial court agreed that it was not necessary for the court reporter to make a record of the videotaped testimony. At the conclusion of the videotape, Mr. Whiteside objected to Dr. Walker's testimony, at page 65, line 18 that "it so happens it's gravitated that the insurance company defense people have sought me out more than the plaintiffs' people have." Mr. Whiteside moved for a mistrial, arguing that the physician's statement injected insurance into the case in violation of his motion in limine prohibiting any mention of Mr. Walter's insurance coverage. The court reserved ruling on the mistrial motion until after the jury reached a verdict.

When the jury reached a verdict in favor of Ms. Hudson, Mr. Whiteside asked that the trial court rule on his motion for a mistrial. The trial court sustained the motion, and stated that it was granting the mistrial motion because Dr. Walker made a statement which referenced insurance companies at page 39, line 22, in his videotaped deposition which was played for the jury. This was the statement by Dr. Walker that his job with Medex is to perform examinations for lawyers "or insurance companies." After sustaining the motion for a mistrial, the trial judge recused herself.

When the newly-assigned trial judge denied Ms. Hudson's motion for judgment on the jury verdict and rescission of the mistrial order, Ms. Hudson filed a petition for a writ of mandamus and/or prohibition in this court. In her petition, she asserted that the trial court had no authority to grant a mistrial after the jury had returned its verdict, citing *Duckett*, 996 S.W.2d at 646. This court then issued a preliminary writ of prohibition and mandamus. *State ex rel. Hudson*, WD 57371. In response to the preliminary writ, the new trial judge rescinded the mistrial order and entered judgment on the jury's verdict. Mr. Whiteside's subsequent motion for a new trial was denied.

■ Mr. Whiteside argues in this point that the trial court erred in failing to grant him a mistrial at the time he initially requested one, which was immediately after

the videotaped deposition was played. "A mistrial is the most drastic remedy for trial error and 'should be granted only where the incident is so grievous that the prejudicial effect can be removed no other way.'" *Philmon v. Baum*, 865 S.W.2d 771, 779 (Mo.App.1993) (quoting *Herndon v. Albert*, 713 S.W.2d 46, 48 (Mo.App. 1986)). The decision whether to grant or deny a mistrial lies within the sound discretion of the trial court. *Chidester v. Dabney*, 944 S.W.2d 219, 221 (Mo.App. 1997). This court will reverse the trial court's decision only if it finds that the decision constituted a manifest abuse of discretion. *Id.*

Our review of Mr. Whiteside's claim of error is hampered by the record he filed on appeal. While the record on appeal includes the transcript of the totality of the deposition of Dr. Walker, the court reporter did not transcribe the portions of the depositions which were played for the jury. Nor was there offered into evidence at trial a transcript edited to reflect the edits to the videotape. While the edited videotape would be evidence of what the jury heard, the videotape was also not included in the record on appeal. In his brief, Mr. Whiteside stated that he does not have possession of a copy of the videotape. There is no indication in the record that he made any effort to obtain a copy.

■ Moreover, it is unclear from the record that Mr. Whiteside provided to this court which of Dr. Walker's references to insurance was actually played to the jury. Prior to offering Dr. Walker's videotaped deposition, Ms. Hudson's counsel had requested that a video technician edit certain portions of the deposition. One of the statements Ms. Hudson's counsel requested that the video technician edit out was Dr. Walker's statement on page 39, line 22 that his job with Medex is to perform examinations for lawyers and insurance companies. The legal file contains an affidavit from the video technician averring that he edited that statement out of the tape. Further evidence that this state-

ment was not played to the jury is the fact that Mr. Whiteside objected only to Dr. Walker's statement on page 65, line 18, that he is employed more frequently by insurance company defense persons than by plaintiffs, and not to Dr. Walker's statement on page 39, line 22, that at Medex, he performs examinations for lawyers and insurance companies. Mr. Whiteside has the obligation to file a record on appeal that contains all of the evidence necessary for this court to rule upon his claim of error. *Judy v. Arkansas Log Homes, Inc.*, 923 S.W.2d 409, 415 (Mo.App.1996). Generally, "[t]he absence of a complete record forecloses appellate review...." *Brancato v. Wholesale Tool Co., Inc.*, 950 S.W.2d 551, 554 (Mo.App.1997).

■ Nevertheless, even if this court were to assume that both of Dr. Walker's references to insurance were played to the jury, the references do not constitute prejudicial error requiring a mistrial. Generally, "it is improper to inject the issue of the existence of liability insurance into an action for damages." *Annen v. Trump*, 913 S.W.2d 16, 23 (Mo.App.1995). The injection of insurance can constitute reversible error if it was done in bad faith. *Taylor v. Republic Automotive Parts, Inc.*, 950 S.W.2d 318, 321 (Mo.App.1997). Not every reference to insurance constitutes reversible error, however. *Id.* The party alleging that the references constitute reversible error must demonstrate that it was prejudiced by the references. *See Annen*, 913 S.W.2d at 23.

Mr. Whiteside has failed to demonstrate that Dr. Walker's references to insurance were injected in bad faith or that he suffered prejudice requiring a mistrial. There is no indication that Ms. Hudson injected the references to insurance in bad faith. Ms. Hudson's counsel advised the video technician to redact all the questions and answers that were objected to during the deposition, and stated that he believed that would eliminate all objectionable statements. Ms. Hudson's counsel provided a copy of the edits to Mr. Whiteside

prior to playing the videotape. Mr. Whiteside claims that he did not have time to review the edits prior to the video being played, but he did not request time to do so. There is no indication that the timing of providing the edits was evidence of bad faith. Further, when Mr. Whiteside first made his request for a mistrial right after the videotape was played, his counsel stated that he was "not suggesting that anything's intentional."

With regard to prejudice, Mr. Whiteside argues that the excessive nature of the $200,000 verdict in favor of Ms. Hudson indicates that the jury was influenced by Dr. Walker's references to insurance. Specifically, Mr. Whiteside points to the fact that in the first trial of this case, the jury returned a verdict for Ms. Hudson in the amount of $3500, while in the this case, the jury returned a verdict for Ms. Hudson in the amount of $200,000. In the first trial, however, Ms. Hudson was not permitted to present any evidence regarding the approximately $20,000 in hospital and doctor bills she incurred in conjunction with her three surgeries. On appeal, this court found that the trial court erred in prohibiting Ms. Hudson from submitting those bills to the jury. *See Hudson,* 966 S.W.2d at 371. The difference in the verdicts between the two trials could reasonably have been the admission of the additional medical bills in the second trial.

This is especially true in light of the non-inflammatory nature of Dr. Walker's references to insurance. Neither reference was in regard to Mr. Walters' insurance coverage. In the two references, Dr. Walker explained that his job at Medex was to perform examinations for lawyers or insurance companies, and that he is employed more frequently by insurance company defense persons. In neither reference does Dr. Walker mention that he was employed by Mr. Walters' insurance company to examine Ms. Hudson. In fact, earlier in the deposition, Dr. Walker stated that he performed an independent medical examination of Ms. Hudson at the request

of Mr. Whiteside's counsel. Mr. Whiteside has failed to demonstrate that Dr. Walker's two brief references to the fact that insurance companies frequently ask him to perform examinations inflamed the passions of the jurors so as to cause them to render the verdict that they did. Since Mr. Whiteside has not shown that he was prejudiced by Dr. Walker's references to insurance, this court cannot say that the trial court abused its discretion by not granting Mr. Whiteside's motion for mistrial at the time that he made it.

Because the first trial judge eventually did grant Mr. Whiteside's motion for a mistrial after the jury rendered its verdict, however, Mr. Whiteside argues that this court should rely on the trial judge's statements regarding the prejudicial effect of Dr. Walker's testimony. When the first trial judge granted the mistrial motion, she stated the basis for her ruling was that Dr. Walker's reference to insurance on page 39, line 22 violated her ruling on the motion in limine, and she was certain that the jury's verdict would be reversed on appeal. As this court has already stated, however, the record before this court is unclear as to whether Dr. Walker's statement on page 39, line 22 was actually played to the jury. The first trial judge did not grant the mistrial motion based upon Dr. Walker's reference to insurance on page 65, line 18, which was the only reference to insurance upon which Mr. Whiteside based his motion for mistrial.

■ In any event, the trial court's granting the mistrial motion after the jury reached its verdict was a nullity. *Duckett,* 996 S.W.2d at 646. At that point, the only remedy the trial court could afford Mr. Whiteside to correct any trial error was a new trial. *Id.* While the first trial judge may have been inclined to have granted a new trial, she recused herself immediately following her entry of the mistrial order. After the second trial judge rescinded the mistrial order following the issuance of this court's preliminary writ of prohibition and mandamus, Mr. Whiteside raised the

issue of the prejudicial effect of the reference to insurance in his motion for new trial. The second trial judge declined to grant the motion for new trial. Based upon this court's review of the record before us, we cannot say that the second trial judge abused his discretion in doing so. Mr. Whiteside's first point is denied.

### Standard of Review—Submissibility of Ms. Hudson's Claims

 Mr. Whiteside's final two points contest the sufficiency of the evidence to support the verdict-directing instruction in this case. The verdict-directing instruction submitted Ms. Hudson's two theories of negligence in the disjunctive, that is, the jury could find in favor of Ms. Hudson if it found that Mr. Walters was negligent in failing to keep a careful lookout or if it found that Mr. Walters was negligent in failing to yield the right of way. When "a disjunctive instruction is submitted to the jury, each alternative submitted in the instruction must be supported by evidence which, if true, would support a verdict for the party submitting the instruction." *Griffin v. Kansas City Southern Ry. Co.*, 965 S.W.2d 458, 460 (Mo.App.1998). In determining the sufficiency of the evidence to support the giving of an instruction, this court views the evidence in the light most favorable to the instruction, "giving the prevailing party the benefit of all the reasonable inferences from those facts, and disregarding all unfavorable inferences." *McCorkle v. Sparks*, 771 S.W.2d 846, 847 (Mo.App.1989). A plaintiff has made a submissible case if, in viewing the evidence in this light, the plaintiff's theories of negligence are more probable than not. *Blackshiers v. Harris*, 980 S.W.2d 189, 190 (Mo.App.1998).

### Ms. Hudson Made a Submissible Case for Failure to Keep a Careful Lookout

 Mr. Whiteside first argues that the evidence was insufficient to support

the court's instructing the jury on Ms. Hudson's claim that Mr. Walters failed to keep a careful lookout. "When operating a motor vehicle, every motorist must exercise the highest duty of care to maintain a careful lookout ahead and laterally upon entering an intersection." *Id.* "This duty is not fulfilled by 'obeying a traffic signal and then proceeding into the intersection without making careful observations to determine whether there is no cross traffic in or so near to the intersection as to constitute an immediate danger.'" *Riscaldante v. Melton*, 927 S.W.2d 899, 902 (Mo.App. 1996). To make a submissible case for failure to keep a careful lookout, the plaintiff must establish "that the [driver] saw or could have seen [the plaintiff] in time to have avoided the collision." *Id.*

In determining what the defendant saw or could have seen, the defendant is "held to have seen what looking would reveal." *Witt v. Peterson*, 310 S.W.2d 857, 860 (Mo. 1958). Here, Mr. Walters told an officer investigating the collision that he did not see the Hudsons' car coming towards the intersection. Mr. Walters did not explain why he did not see the Hudsons' car. Indeed, the evidence, in the light most favorable to Ms. Hudson, showed that Mr. Walters' view towards the Hudsons' car was unobstructed.[3] Herb Thomas, a retired Missouri State Highway Patrol officer who investigated the accident at Mr. Whiteside's request, testified that, from where Mr. Walters was stopped at the stop sign on Lake Road 5–35, he had an unobstructed view of 1,125 feet in the direction the Hudsons were traveling on Highway 5. Moreover, although it was raining on the day of the collision, the rain was not heavy enough to affect visibility. The evidence establishes that since the Hudsons' car would have been readily seen for 1,125 feet prior to the intersection, Mr. Walters could have seen the Hudsons' car

---

**3.** While Mr. Hudson testified that there were cars coming from the opposite direction, the jury could have reasonably believed that the cars were not sufficient to obstruct Mr. Walters' view of the Hudsons' car as he was stopped at the intersection.

approaching from where he was stopped at the intersection.

Mr. Whiteside argues, however, that Ms. Hudson failed to establish that Mr. Walters had sufficient time, distance, and ability to take action to avoid the collision. Mr. Whiteside is correct that evidence of the time, distance, means and ability are necessary in cases where the vehicle struck "is ahead of or intersecting the path of an oncoming vehicle" in order to establish that "the party charged with failure to keep a careful lookout could have acted in some manner so as to have avoided the resultant accident." *Williams v. Christian*, 520 S.W.2d 139, 142–43 (Mo.App. 1974). Nevertheless, "[i]n certain fact situations, our Supreme Court has applied the duty to keep a careful lookout so that time, distance, means and ability are not as crucial...." *Morgan v. Toomey*, 719 S.W.2d 129, 133 (Mo.App.1986) (citing *McWilliams v. Wright*, 460 S.W.2d 699, 700–02 (Mo.1970)). In these situations, drivers "were liable for their actions from the location where it was possible to see the plaintiffs and, thereby, they created danger by acting as they did rather than being liable for the failure to act after danger should have been realized." *Blackshiers*, 980 S.W.2d at 190–91.

In *McWilliams*, the defendant was the driver of a motorcycle on which the plaintiff was a passenger. 460 S.W.2d at 700. They were riding at night with the motorcycle's lights on. The defendant suddenly swerved the motorcycle left into oncoming traffic, colliding with a car that also had its headlights on. *Id.* at 701–02. On appeal, the defendant argued that the plaintiff failed to present substantial evidence that the defendant "could have seen the danger of harm soon enough to have taken effective precautionary action." *Id.* at 702.

Relying on evidence that the defendant could have seen the car's headlights "nearly one-half mile away," the Court stated that the defendant was negligent for failing to observe that which was readily seen, and his failure to observe the car when it was readily seen made the defendant negligently cause the collision by swerving into oncoming traffic in reaction to finally seeing the car. *Id.* The Court held that the defendant's means of avoiding the accident would have been to continue driving as he had been before he swerved into the oncoming traffic:

> Effective precautionary action in such a case would have been merely to have stayed in his proper lane of travel, and to have refrained from turning left. Causation is obvious: But for the failure of defendant ... to maintain a vigilant lookout no accident in fact would have occurred, assuming these facts to be true. Had he seen the other vehicle before he did, he would not have turned left when he saw it.

*Id.* *McWilliams* was followed by this court in *Williams*, 520 S.W.2d at 143–44, and by the Eastern District in *Morgan*, 719 S.W.2d at 133–36.

The circumstances of the collision in this case are analogous to those in *McWilliams*, *Williams*, and *Morgan*. This is not a situation where both cars were in motion on an intersecting path at the time the Hudsons' car became visible to Mr. Walters at the intersection. If that had been the case, then evidence of Mr. Walters' time, distance, and ability to take action to avoid the accident would be important. Here, however, the evidence established that while Mr. Walters was stopped at the stop sign on Lake Road 5–35, he had an unobstructed view toward the Hudsons' car of 1,125 feet. Mr. Hudson testified that, as he approached the intersection, he was going with the flow of traffic on Highway 5, where the speed limit was 35 miles per hour. There were cars in front of and behind the Hudsons' car. Mr. Hudson first saw Mr. Walters stopped at the stop sign when the Hudsons' car was approximately 20 feet from the intersection. Mr. Hudson next saw Mr. Walters' car when it was only 2 to 5 feet in front of him.

Thus, viewing the evidence in the light most favorable to Ms. Hudson, Mr. Walters was still stopped at the stop sign when the Hudsons' car was only 20 feet from the intersection, in the middle of a line of cars, and traveling with the flow of traffic in a 35 miles-per-hour zone. Under these circumstances, effective precautionary action would have been for Mr. Walters to have remained stopped, and to have refrained from pulling out into the intersection in front of the Hudsons' car. Like the defendant in *McWilliams*, Mr. Walters created the danger of a collision by failing to see the Hudsons' car before pulling out in front of it. But for Mr. Walters' failure to maintain a careful lookout, no accident would have occurred. Ms. Hudson presented sufficient evidence that Mr. Walters could have seen the Hudsons' car in time to have avoided the collision. Therefore, the court properly submitted the instruction that Mr. Walters was negligent for failing to keep a careful lookout. Mr. Whiteside's second point is denied.

### Ms. Hudson Made A Submissible Case for Failure to Yield the Right–of–Way

 Mr. Whiteside next argues that the evidence was insufficient to support the court's instructing the jury on Ms. Hudson's claim that Mr. Walters failed to yield the right-of-way. To make a submissible case for failure to yield the right-of-way at a stop sign, the plaintiff must present sufficient evidence that the plaintiff's vehicle was so close to the intersection that it was an immediate hazard. MAI 14.05. "This evidence can include, *inter alia,* the speed of plaintiff's vehicle, the location of the collision, or the distance a person stopped at the intersection could see in the direction of plaintiff's vehicle." *Meyer v. Thornhill,* 879 S.W.2d 786, 788 (Mo.App. 1994). "Such evidence, together with evidence of the stop sign's location, the collision, and damages suffered," make a submissible case for failure to yield the right-of-way at a stop sign. *Id.*

Mr. Whiteside argues that Ms. Hudson failed to present evidence of the speed of both vehicles, the distance of either vehicle from the intersection at the time that Mr. Walters proceeded into the intersection, and the distance that Mr. Walters had an unobstructed view in the direction of the Hudsons' car. In making such an argument, however, Mr. Whiteside ignores the evidence favorable to Ms. Hudson. The evidence was that Mr. Walters was still stopped at the stop sign when Mr. Hudson was only 20 feet from the intersection and Mr. Hudson was traveling with the flow of traffic in a 35 miles-per-hour zone. Additionally, Mr. Walters had an unobstructed view of 1,125 feet in the direction of the Hudsons' car. This evidence, combined with the fact that a collision occurred, was sufficient to create a question for the jury regarding whether the Hudsons' car presented an immediate hazard requiring Mr. Walters to yield at the stop sign. *See Ross v. Prime Transport, Inc.,* 3 S.W.3d 867, 868 (Mo.App.1999) (holding that the fact that a collision occurred, in addition to other evidence, supports a finding that plaintiff's vehicle was so close to the intersection as to create an immediate hazard). Therefore, the trial court did not err in instructing the jury on Ms. Hudson's claim that Mr. Walters failed to yield the right-of-way. Mr. Whiteside's third point is denied.

The judgment of the trial court is affirmed.

All concur.