**Steve SAUNDERS, Appellant,**

v.

**Kathleen BASKA, Respondent.**

**No. WD 75405.**

Missouri Court of Appeals, Western District.

April 16, 2013.

Mav H. Mirfaasihi, Kansas City, MO, for appellant.

Mark E. Meyer, Kansas City, MO, for respondent.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges.

LISA WHITE HARDWICK, Judge.

This is an appeal from the circuit court's directed verdict in favor of Kathleen Baska and against Steve Saunders on his negligence claim arising from an automobile accident at an uncontrolled intersection. Appellant Saunders contends the directed verdict was improper because he presented a submissible case of negligence based on Baska's failure to yield the right-of-way and failure to keep a careful lookout. For reasons explained herein, we reverse the directed verdict and remand for a new trial.

### FACTUAL & PROCEDURAL HISTORY

On November 25, 2008, at approximately 7:00 A.M., Steve Saunders was driving his automobile east on Northwest 86th Street in Platte County. At the same time, Kathleen Baska, who had just picked up her friend, Shelbi Webb, was driving her automobile north on North Pontiac Avenue, which meets Northwest 86th Street at an uncontrolled intersection. Baska approached the intersection from Saunders's right, and Saunders was to Baska's left. The two vehicles collided at the intersection. Saunders was injured, and both vehicles were damaged in the collision.

On July 29, 2010, Saunders filed a petition for damages against Baska. The petition, as amended, alleged that Baska was negligent in failing to keep a careful lookout, failing to yield the right-of-way, and driving at an excessive speed. The amended petition sought actual and punitive damages.

At trial, Saunders testified that he lives on Northwest 86th Street, four houses down from the intersection. Saunders said he had no recollection of the accident, testifying: "I remember getting in my car, backing out of the driveway. I remember starting up the street. And after that the next thing I remember was somebody beating on the window of my vehicle with a—looked like a shoe." Despite his lack of recollection at trial, Saunders provided medical records to indicate that he told one of the responding EMTs at the scene that "he was traveling approximately 10 miles an hour when he was impacted by a car traveling at 10 to 15 miles an hour."

Saunders presented three photographs to show that his vehicle sustained damage to the right-side front fender and right-side back fender. Two additional photographs showed that Baska's vehicle sustained heavy front-end damage, particularly to its left front. Another photograph showed that Baska's view from the intersection to her left was unobstructed.

Saunders also called Baska as a witness. Baska, who was sixteen at the time of the accident, testified that she came to a complete stop at the intersection, looked both ways, and observed no oncoming traffic. Baska testified that she had an unobstructed view in the direction from which Saunders's vehicle approached the intersection. She proceeded into the intersection upon observing that no cars were approaching. It was not until Baska had entered the intersection that she noticed, with her peripheral vision, Saunders's vehicle travel-

ing towards her. Baska testified that she "hit [her] brake to try to avoid [Saunders], and was struck." Baska stated that she entered the intersection before Saunders did and that she was traveling under five miles per hour at the time of the collision.

On direct examination by Saunders's counsel, Baska admitted she was running late on the morning of the accident. Saunders's counsel engaged Baska in a line of questioning regarding text messages sent and received on her cell phone within minutes of the accident. Baska stated that the collision occurred at approximately 7:05 A.M. Baska's phone records indicate that she sent a text message at 7:04 A.M. and received a text message at 7:06 A.M. At trial, Baska explained that she sent the 7:04 A.M. text message while parked in Webb's driveway and that she put her phone away once Webb got into the car. Baska denied that she was texting while driving.

Baska moved for a directed verdict at the close of Saunders's evidence. The court granted the motion with regard to the request for punitive damages but denied a directed verdict on the negligence claims.

Baska thereafter presented the deposition testimony of her passenger, Shelbi Webb, and Webb's mother, Robyn Plickebaum. Webb testified that Baska brought her vehicle to a full stop and looked both ways before entering the intersection. In response to a question as to her estimate of the speed at which Saunders's vehicle was traveling, Webb testified: "I'm—I'm assuming at a faster pace than what he should have been going because I did not see him before he hit us. It was like there w[ere] no cars and then he was there." When asked how fast Baska was traveling at the time of the accident, Webb answered: "Not fast at all. I mean, I'm not sure we were going yet." Webb testified

that, at the time the collision occurred, Baska was "about to" or "starting to" enter the intersection.

Plickebaum testified that the accident occurred "up the street" from her home. She heard the collision, shortly after Webb left the home with Baska, and rushed to the scene. Plickebaum did not see the accident, but Webb told her that [Baska] "didn't do anything wrong." Plickebaum also testified that Baska called her to apologize after the accident.

Baska renewed her motion for directed verdict at the close of all evidence. The circuit court granted the motion, directing a verdict in Baska's favor on all of the negligence claims. Thereafter, Saunders filed a motion for new trial, which the circuit court denied. Saunders appeals.

ANALYSIS

■ Saunders contends the circuit court erred in granting Baska's motion for a directed verdict at the close of all the evidence. "In reviewing a trial court's judgment granting a motion for directed verdict, we must determine whether the plaintiff made a submissible case...." *Dunn v. Enterprise Rent–A–Car Co.*, 170 S.W.3d 1, 3 (Mo.App.2005). In so doing, we view the evidence and permissible inferences in the light most favorable to the plaintiff, disregarding all contrary evidence and inferences. *Id.* Directing a verdict is a drastic measure and, thus, a presumption "is made in favor of reversing the trial court's judgment sustaining a motion for directed verdict unless the facts and inferences therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result." *Ray v. Wisdom*, 166 S.W.3d 592, 595 (Mo. App.2005). "If reasonable minds can draw different conclusions from the facts, a directed verdict is not proper." *Id.*

A plaintiff presents a submissible case by presenting substantial evidence to establish each element of his claim. *Meyer v. Thornhill,* 879 S.W.2d 786, 787 (Mo. App.1994). "If a plaintiff makes a submissible case on any cause of action pleaded, a directed verdict is improper." *Id.*

"To make a submissible case of negligence, a plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, that the defendant failed to perform that duty, and that the defendant's failure proximately caused injury to the plaintiff." *Boggs ex rel. Boggs v. Lay,* 164 S.W.3d 4, 15 (Mo.App.2005). In the instant case, Saunders pleaded that Baska was negligent in: (1) failing to yield the right-of-way, (2) failing to keep a careful lookout, and (3) driving at an excessive speed. The circuit court granted a directed verdict as to all three theories. Saunders appeals the circuit court's grant of Baska's motion for directed verdict as to his right-of-way and lookout claims.

### Failure to Yield the Right–of–Way

In Point I, Saunders contends the circuit court erred in granting the motion for directed verdict because he presented substantial evidence of Baska's negligence in failing to yield the right-of-way.

" 'Right of way' means the right of one vehicle to proceed ahead of another." *Moreland v. Crain,* 722 S.W.2d 322, 324 (Mo.App.1986). The rules of the road regarding right-of-way at intersections are codified in Section 304.351, RSMo. Cum. Supp.2012. Each subsection governs a particular type of intersection. Under subsection 1, a vehicle approaching an uncontrolled intersection has an absolute duty to yield the right-of-way to a vehicle which has already entered the intersection from a different highway. *Krenski v. Aubuchon,* 841 S.W.2d 721, 724–25 (Mo.App. 1992). Under subsection 2, "[w]hen two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the driver of the vehicle on the right." § 304.351.2.

Reading these two subsections together, when two vehicles enter an uncontrolled intersection from different highways, the driver of the vehicle on the right has the right-of-way if (1) the two vehicles enter the intersection at approximately the same time, or (2) the vehicle on the right entered the intersection first. Stated differently, to make a submissible case as to the duty element of his failure to yield the right-of-way claim, Saunders—as the driver of the vehicle to the left of Baska—had to present sufficient evidence from which reasonable minds could conclude that he entered the intersection before Baska.

Saunders presented photographs showing that his vehicle sustained damage to the right-side front and back fender, and Baska's vehicle sustained heavy front-end damage, particularly to its left front. Saunders asserts that the location of damage on the parties' vehicles establishes that he "had traveled one and a half lanes through the intersection before [Baska] pulled a few feet forward ... thereby crashing her front end into the passenger side of [his] vehicle." See *Boone v. Richardson,* 388 S.W.2d 68, 73 (Mo.App.1965) ("The location of the damage to the vehicles would in itself be some evidence of their relative positions at the time of impact....."). While evidence of the location of damage to the vehicles, standing alone, is likely insufficient to take the issue of whether Saunders entered the intersection first out of the realm of speculation, there was additional evidence presented to support Saunders's theory. See *Moreland,* 722 S.W.2d at 324.

Webb testified that the collision occurred when Baska was "about to" or "starting to" enter the intersection. Additionally, Saunders told an EMT at the scene that he was traveling ten miles an hour and Baska was traveling ten to fifteen miles an hour when the collision occurred. Considering this evidence as to the similar speeds of the vehicles, together with Webb's testimony and the location of the damage to the vehicles, a jury could reasonably infer that Saunders had entered the intersection and was more than halfway through when Baska entered and struck the right side of Saunders's vehicle.

█ "The absolute duty imposed upon a defendant by ordinance or statute to yield the right of way is negative in character." *Haymes v. Swan*, 413 S.W.2d 319, 325 (Mo.App.1967). Thus, "[i]f the defendant entered the intersection when it was already occupied by plaintiff's vehicle and a collision resulted, such facts alone established a basis of recovery." *Harrellson v. Barks*, 326 S.W.2d 351, 363 (Mo.App.1959). Accordingly, by presenting sufficient evidence from which a jury could reasonably conclude that he entered the intersection before Baska, Saunders established a submissible case for failure to yield the right-of-way. Point I is granted.

### Failure to Keep a Careful Lookout

█ In Point II, Saunders contends the circuit court erred in granting the motion for directed verdict because he presented substantial evidence to make a submissible case that Baska was negligent is failing to keep a careful lookout.

█ "A failure to keep a lookout submission contains two inherent components." *Kearbey v. Wichita Southeast Kansas*, 240 S.W.3d 175, 182 (Mo.App. 2007). First, the plaintiff must present substantial evidence from which a " 'jury could find that in the exercise of the high-est degree of care, the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle' " in time to avoid the impact. *Id.* (quoting *Hill v. Barton*, 579 S.W.2d 121, 128 (Mo.App.1979)).

█ Here, in granting Baska's motion for a directed verdict, the circuit court reasoned that, as to Saunders's failure to keep a lookout claim, Webb's and Baska's testimony that Baska stopped and looked both ways was "uncontroverted and uncontested" and "reflect[ed] that Ms. Baska did keep a careful lookout." However, "[m]erely looking does not fulfill one's duty to keep a careful lookout." *Id.* " 'A person is required to look in such an observant manner as to enable him to see what one in the exercise of the highest degree of care *could and should have seen.*' " *Id.* (emphasis added) (quoting *Hill*, 579 S.W.2d at 128). Therefore, the circuit court's statement that Baska satisfied her duty to keep a careful lookout by merely stopping and looking both ways, reflects an erroneous view of the law.

█ Additionally, the circuit court erred in finding that the testimony of Baska and Webb was uncontroverted. " 'Generally, it is impossible for a party to produce direct evidence that the other party was not looking' " and, thus, " 'proof can be made circumstantially.' " *Id.* (quoting *Finninger v. Johnson*, 692 S.W.2d 390, 392 (Mo.App.1985)). Here, Saunders presented circumstantial evidence that Baska could and should have seen Saunders's vehicle before the collision. Accordingly, not only did the circuit court err in finding Baska's and Webb's testimony uncontroverted, but, more fundamentally, the court failed to resolve conflicts in the evidence in Saunders's favor.

A photograph introduced into evidence shows that Baska's view from the intersection to her left was unobstructed to at

least Saunders's house. Although Baska testified that she did not have the exact same view as shown in the photograph,[1] she did agree that her view to the left was not "obstructed in any way." See *Bryant v. Frank*, 765 S.W.2d 731, 733 (Mo.App. 1989) (holding evidence that defendants had an unobstructed view of plaintiff's car was sufficient to support a finding that the defendants failed to keep a careful lookout).

Despite proof of Baska's unobstructed view, in order for Baska, in exercising the highest degree of care, to have been able to see Saunders, Saunders would need to have already backed out of his driveway and begun travelling east on Northwest 86th Street at the time Baska stopped at the intersection and looked. Although there was no direct evidence that Saunders was already traveling on Northwest 86th Street when Baska reached the intersection, such conclusion could be reasonably inferred from (1) the fact that, after backing out of his driveway, Saunders had to drive the distance of at least three houses before reaching the intersection; (2) Saunders's statement to the EMT that he was traveling ten miles an hour; and (3) Baska's and Webb's testimony that the collision occurred immediately after Baska had stopped at the intersection.

Saunders also presented evidence that Baska was text messaging on her cell phone around the same time the accident occurred. Additionally, Baska admitted that she was running late on the morning of the accident. From this evidence, a jury could reasonably infer that, as Baska reached the intersection, she was distracted and looked to her left so hastily that she failed to see Saunders's vehicle, which she could and should have seen. See

C.J.S. *Motor Vehicles* § 662 (2012) ("A reasonable inference of negligence may be presented by evidence that the driver was using a cell phone at the time of a rear-end accident and was distracted as a result.").

■■■ Our analysis does not end here. As mentioned earlier, there are two components to a failure to keep a lookout submission; "[p]roof of failure to keep a careful lookout, standing alone, is not enough." *Williams v. Christian*, 520 S.W.2d 139, 143 (Mo.App.1974). To make a submissible case for failure to keep a careful lookout, "[t]here must also be evidence that the driver had the means to avoid the collision and failed to use them." *Foster v. Farmers Ins. Co., Inc.*, 775 S.W.2d 143, 144 (Mo. banc 1989). Generally, this component requires the plaintiff to establish "the time when and the distance at which the potential danger of collision triggered the defendant's specific duty to take effective precautionary action." *Zempel*, 182 S.W.3d at 620. Nevertheless, in certain fact situations, our courts have eliminated the requirement of proving time and distance. *Id.* "In these situations, drivers 'were liable for their actions from the location where it was possible to see the plaintiffs and, thereby, they created danger by acting as they did rather than being liable for the failure to act after danger should have been realized.'" *Hudson v. Whiteside*, 34 S.W.3d 420, 428 (Mo. App.2000) (quoting *Blackshiers v. Harris*, 980 S.W.2d 189, 190–91 (Mo.App.1998)).

In *Hudson*, plaintiffs' southbound vehicle collided with defendant's westbound vehicle at an intersection where defendant had a stop sign but the plaintiffs did not. *Id.* at 421–22. Defendant stopped at the stop sign, did not see plaintiffs, and then proceeded into the intersection, at which

---

1. Baska testified that there was "more of a hill" than shown in the photograph. Baska also stated: "There was on my left-hand side a big—a—a tree that blocked the view of the hill, but there was enough in front of that tree that I could tell there was no cars there." See *Zempel v. Slater*, 182 S.W.3d 609, 612 (Mo.App.2005).

point the vehicles collided. *Id.* At trial, the evidence established that, while stopped at the stop sign, defendant had an unobstructed view in the direction from which plaintiffs were traveling and, therefore, could and should have seen plaintiffs' vehicle from the point at which he stopped. *Id.* at 422.

On appeal, defendant contended that plaintiffs did not establish that defendant had sufficient time and distance to take precautionary action and, thus, plaintiffs failed to make a submissible lookout case. *Id.* at 428. This court disagreed, finding that "effective precautionary action would have been for [defendant] to have remained stopped, and to have refrained from pulling out into the intersection in front of [plaintiffs'] car." *Id.* at 429. Therefore, this court held that evidence of time and distance was unnecessary under the circumstances of the case because the "[defendant] created the danger of a collision by failing to see the [plaintiffs'] car before pulling out in front of it." *Id.; See also McWilliams v. Wright*, 460 S.W.2d 699 (Mo.1970);[2] *Williams*, 520 S.W.2d at 144.[3]

Similar to *Hudson*, the absence of precise time and distance evidence in the instant case does not preclude submission of

the claim because "[t]his is not a situation where both cars were in motion on an intersecting path at the time [Saunders's] car became visible to [Baska] at the intersection." *Hudson*, 34 S.W.3d at 428. Instead, viewing the evidence in the light most favorable to Saunders, Baska was stopped at the intersection when she could and should have seen Saunders's approaching vehicle. Therefore, effective precautionary action would have been for Baska to have remained stopped, and to have refrained from pulling out into the intersection. "But for [Baska's] failure to maintain a careful lookout, no accident would have occurred." *Id.* at 429. Accordingly, there was sufficient evidence to warrant the submission of Saunders's negligence claim based on Baska's failure to maintain a proper lookout. Point II is granted.

CONCLUSION

The judgment is reversed, and the cause is remanded for a new trial.

ALL CONCUR.

---

2. In *McWilliams*, upon noticing an eastbound driver's headlights right in front of him, a westbound motorcyclist swerved into the eastbound lane of traffic and collided with the eastbound driver. 460 S.W.2d at 701. There, the Missouri Supreme Court held that the eastbound driver made a submissible lookout case against the westbound motorcyclist based on evidence that the motorcyclist had an unobstructed view of the eastbound vehicle's headlights for more than 1,300 feet from the point of impact. *Id.* at 701–02. The Court explained: "Effective precautionary action in such a case would have been merely to have stayed in his proper lane of travel, and to have refrained from turning left. Causation is obvious: But for the failure of defendant … to maintain a vigilant lookout no

accident in fact would have occurred. …" *Id.* at 702.

3. In *Williams*, a pedestrian was struck by an eastbound driver while standing on the south shoulder of the eastbound lane of traffic. 520 S.W.2d at 142. There, this court held that the pedestrian made a submissible case based on evidence that the eastbound driver's view of the pedestrian was unobstructed for at least the distance of two houses west of where the pedestrian was standing. *Id.* Following *McWilliams*, this court explained that the "absence of evidence as to precise time and distance [did] not preclude submissibility" because "[b]ut for the failure of [driver] to maintain a proper lookout no accident in fact would have occurred." *Id.* at 144.