

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JANET KOTTMAN, ET AL., | ) | |
| | ) | |
| Appellants, | ) | WD77118 |
| | ) | |
| vs. | ) | Opinion filed:  December 23, 2014 |
| | ) | |
| MISSOURI STATE FAIR, ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF PETTIS COUNTY, MISSOURI**
**THE HONORABLE ROBERT L. KOFFMAN, JUDGE**

Before Division Two:  Victor C. Howard, Presiding Judge,
James E. Welsh, Judge and Anthony Rex Gabbert, Judge

Janet and Gary Kottman appeal from the trial court's judgment against them on their claims against the Missouri State Fair and Terry Watson for negligence, negligence per se, respondeat superior, negligent entrustment, negligent hiring and retention, and loss of consortium arising from Ms. Kottman's fall from a tram at the Missouri State Fair in August 2008.  At the close of the Kottmans' case-in-chief, Defendants filed a motion for directed verdict asserting that there was no substantial evidence supporting the causation element of the Kottmans' claims. Following arguments on the motion, the trial court granted a directed verdict in Defendants' favor.  On appeal, the Kottmans contend that the trial court erred in granting the motion for

directed verdict because they made a submissible case on their claims.[1]  The judgment directing a verdict is reversed, and the case is remanded for a new trial.

## Factual and Procedural Background

In August 2008, Ms. Kottman was working a booth at the Missouri State Fair as part of her employment with Upromise Investments to market and promote the 529 college savings plan through community outreach.  When she arrived at the fairgrounds for her shift on August 8, 2008, she parked her car in a gravel/grass lot and boarded a tram to ride to the front ticket gate where she had planned to meet two co-workers, Temeka Easter and Merriam Broaddus.  The tram was pulled by a tractor, and passengers sat facing out on one of two benches running the length of the tram.  The tram had a hostess onboard who was provided a bicycle horn to signal the driver to stop in case of an emergency.  Ms. Kottman had with her a 30-pound box similar in size to a banker's box, a plastic bag of Wal-Mart purchases, and a backpack style purse.  About one hundred yards from the gate, the tram moved from gravel to pavement.  Once the tram was on the pavement but before it reached the front gate, Ms. Kottman fell from the tram.  As a result of the fall, her right hip was dislocated and "shattered."  Her right knee was also injured and required surgery.

The Kottmans sued the Missouri State Fair and Terry Watson, the driver of the tram, under theories of negligence, negligence per se, respondeat superior, negligent entrustment, negligent hiring and retention, and loss of consortium.  Their petition alleged that while Ms. Kottman was riding the tram, an employee of the Missouri State Fair serving as the tram hostess sounded a horn causing Mr. Watson to abruptly and suddenly stop the tram without warning.  It

---

[1] The Kottmans raise a second point on appeal regarding the exclusion of evidence, but because the first point is dispositive, the second point is not addressed.

2

further alleged that as a result of the sudden stop, Ms. Kottman was thrown from the tram to the ground causing her serious physical injuries.

On the fourth day of trial, after Plaintiffs rested, Defendants moved for directed verdict asserting that there was no substantial evidence supporting the causation element of the Kottmans' claims. Specifically, they argued that there was no evidence permitting any reasonable juror to conclude that a sudden and abrupt stop of the tram caused Ms. Kottman's injuries. The trial court granted Defendants' motion and entered judgment in favor of Defendants on all claims. This appeal by the Kottmans followed.

**Standard of Review**

In reviewing the trial court's judgment granting a motion for directed verdict, an appellate court must determine whether the plaintiff made a submissible case. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011). The evidence and reasonable inferences are viewed in the light most favorable to the plaintiff to determine whether a submissible case was made. *Id.* "Whether the plaintiff made a submissible case is a question of law subject to de novo review." *Id.* (internal quotes and citation omitted). A directed verdict is a drastic measure, thus, "a presumption is made in favor of reversing the trial court's judgment sustaining a motion for directed verdict unless the facts and inferences therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result." *Saunders v. Baska*, 397 S.W.3d 44, 47 (Mo. App. W.D. 2013)(internal quotes and citation omitted). "If reasonable minds can draw different conclusions from the facts, a directed verdict is not proper." *Id.* (internal quotes and citation omitted).

"A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence." *Moore*, 332 S.W.3d at 756 (internal quotes and

citation omitted). "Substantial evidence is competent evidence from which the trier of fact can reasonably decide the case." *Payne v. City of St. Joseph*, 135 S.W.3d 444, 450 (Mo. App. W.D. 2004). Essential facts may be proven by circumstantial evidence if the facts proven and the conclusion drawn are of such a nature and are so related to each other that the conclusions may be fairly inferred. *Moore*, 332 S.W.3d at 756.

### Evidence in the Light Most Favorable to Plaintiff

Ms. Kottman testified that once the tram drove onto the pavement, she heard someone yell her name from behind her. She turned and saw that it was her co-workers, Ms. Easter and Ms. Broaddus, walking outside of the ticket gate. She turned, waved, and said hi. Ms. Kottman testified that she did not ask anyone to stop the tram when she saw her co-workers and that the previous times when she rode the tram from the parking lot to the gate, it would stop at the gate. She stated that she was gathering her things, including a 30-pound box, a plastic bag, and a purse and that she was not prepared for the tram to stop where it ultimately did and had no reason to attempt to get off before the designated area.

Ms. Kottman also called as witnesses Gayle Yates, who runs the tram service for the Missouri State Fair with her husband; Amanda Fischer, the fifteen-year old tram hostess; and Terry Watson, the tram driver. Ms. Yates testified that their tram rules and policies included the rule that for passenger safety in paved areas, trams are only to stop at designated tram stops unless there is an emergency. She further testified that tram hostesses are provided bicycle horns to signal the driver. She explained that while the hostess may use the horn to signal the driver to stop for non-emergencies in the unpaved parking and camping areas, the hostess is not to use the horn on paved surfaces except in an emergency.

Mr. Watson, the tram driver, acknowledged at trial that in paved areas, he was only to

4

stop the tram at tram stops, the hostess's horn was only to be used for emergencies in those areas, and when he heard the horn, he was supposed to stop the tram. Mr. Watson testified that as he approached the gate to make his stop he was aware of two women calling and waving to someone on the tram. At that moment the hostess sounded the horn which was his signal to stop. He stated that when he heard the hostess sound her horn, he quickly stopped the tram. He also acknowledged that, in his earlier deposition, he had described the stopping of the tram as "immediate" when he heard the hostess's horn.

Ms. Fischer, the tram hostess, testified that she did not remember seeing Ms. Kottman stand while on the tram, did not remember seeing her attempt to step off the tram before it stopped moving, and did not remember seeing her fall off the tram. She acknowledged at trial that, in previous statements, she had stated that the tram did not start slowing until after she blew the horn.

Finally, Ms. Easter, Ms. Kottman's co-worker, testified in her videotaped deposition played for the jury that Ms. Kottman shifted the box she had on her lap and turned to wave at her, the horn sounded, and the tram stopped. Ms. Easter testified that when the tram stopped, Ms. Kottman put her foot down on the ground to catch herself and fell off the tram. She further stated that Ms. Kottman appeared off balance when her foot hit the ground and that the movement of the tram caused her to lose her balance.

**Plaintiffs Made a Submissible Case**

To prove a causal connection between the alleged negligent act and injury, the plaintiff must show both causation in fact and proximate cause. *Freight House Lofts Condo Ass'n v. VSI Meter Servs., Inc.*, 402 S.W.3d 586, 599 (Mo. App. W.D. 2013). The "but for" test is applied to determine whether causation in fact has been established. *Id.* "The 'but for' test for causation

5

provides that the defendant's conduct is a cause of the event if the event would not have occurred 'but for' that conduct." *Id.* (internal quotes and citation omitted). "Causation of fact is an issue for the jury if sufficient evidence is presented from which the jury could reasonably find that the plaintiff's injury was the direct result of the defendant's negligence." *Id.* (internal quotes and citation omitted). "The test for establishing proximate cause is whether the negligence is an efficient cause which sets in motion the chain of circumstances leading to the plaintiff's injuries or damages." *Id.* (internal quotes and citation omitted). "A submissible case is made on the issue of proximate cause if substantial evidence is presented to show the injury is a natural and probable consequence of a defendant's negligence." *Id.* (internal quotes and citation omitted).

"Evidence of causation must be based on probative facts not on mere speculation or conjecture." *Payne*, 135 S.W.3d at 451 (internal quotes and citation omitted). However, in determining whether a submissible case has been made on the basis of causation, absolute certainty is not required to prove a causal connection between the defendant's actions and the plaintiff's injury. *Freight House Lofts Condo Ass'n*, 402 S.W.3d at 599. "It is wholly permissible for the jury to infer causation from the circumstances." *Id.* (internal quotes and citation omitted). "If the logical conclusion from the evidence is that if certain things had been done certain results would not have occurred, and such results did occur, the evidence of causation is sufficient." *Id.* (internal quotes and citation omitted).

From all of the evidence, a jury could have reasonably inferred that Ms. Kottman was in a position where a sudden stop would surprise her and she would be unable to catch herself. It could also have reasonably inferred that Mr. Watson believed an emergency existed when he heard the horn and that he suddenly and unexpectedly stopped the tram. Finally, a reasonable inference could have been made that the sudden and unexpected stop of the tram caused Ms.

Kottman to lose her balance and fall from the tram. While other evidence was presented that could have raised contrary inferences, reasonable minds could have drawn different conclusions from the facts; therefore, a directed verdict was not proper.[2]

The directed verdict is reversed, and the cause is remanded for a new trial.

_____
VICTOR C. HOWARD, JUDGE

All concur.

---

[2] Defendants also argue in their brief that the directed verdict was proper because the evidence was insufficient to make a submissible case as to the breach of any duty owed to the Kottmans. Although an appellate court may affirm the trial court if it is correct on any ground, not just the grounds given by the trial court, it does not go beyond the grounds asserted in the motion and briefed on appeal to look for other reasons to affirm. *Cupp v. Nat'l R.R. Passenger Corp.*, 138 S.W.3d 766, 772-73 (Mo. App. E.D. 2004). Defendants concede that they did not assert any basis in their motion for directed verdict apart from lack of causation. Accordingly, the issue of breach of a duty is not addressed.